BROADWAY STRAND THEATRE CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11506.    Promulgated June 30, 1928.

*Lee I. Park, Esq.*, for the petitioner.
*M. N. Fisher, Esq.*, for the respondent.

OPINION.

MILLIKEN: The main question presented for determination is whether the income for the year 1921 upon which the deficiency is based was the income of petitioner or of Phil Gleichman, an individual. In view of the extended and detailed findings of fact, we will not repeat them here. There is no dispute that prior to September, 1919, the petitioner was conducted and did business as a corporation. After that date and during the taxable year it was conducted exactly as it had been before except that there was a change of policy as to the character of pictures displayed. The mere fact that Gleichman owned or controlled the entire capital stock did not

dissolve the corporation, nor did the failure to hold corporate meetings or declare dividends impair its existence. It was impossible to conduct the business without the corporation for it held the lease on the theatre and owned all the property therein. Gleichman and his attorney both testify that the corporation was continued in order to hold the lease and to relieve Gleichman from personal liability. Under these circumstances, we hold that the income in question was that of the corporation petitioner. Where a corporate cloak is resorted to for its business benefits, the burdens, if any, must also be assumed. The declarations in the contracts with producers of pictures that Gleichman was the owner of the lease are of no consequence as they are merely self-serving and not in accord with the facts.

The Board had before it a similar question in *Hinz & Landt, Inc.*, 8 B. T. A. 375, where a partnership of the same name claimed to have succeeded to the business of a corporation. It was there said:

It may be conceded without discussion that, as suggested by the petitioner, no particular form of contract is necessary to the creation of a valid partnership, and that the contract may be oral or written. We may even concede for the purpose of this opinion that the several stockholders of the petitioner did at the informal meeting of September 25, 1920, and shortly thereafter, enter into a valid partnership agreement, but the formation of the partnership was not of itself sufficient to vest it with title to the petitioner's assets, and whether it acquired the petitioner's business on January 1, 1920, or at a later date, is a question of fact to be determined from the evidence. While it may have been the intention of the persons who formed the partnership, and who were also directors of the corporation, to acquire and take over the assets of the corporation on January 1, 1920, we are of the opinion that the evidence is not sufficient to warrant us in holding that they did in fact acquire them at that time. The greater weight of the evidence is against that view. The evidence shows that during the period in question the business was conducted under the corporate name, all purchases were made in the name of the corporation and were paid for with its checks duly signed by its treasurer. The evidence further shows that as late as February 28, 1920, the board of directors contemplated an increase of the corporation's capital stock and actually called a stockholders meeting for that purpose. These facts are all inconsistent with the petitioner's claim that the business was taken over and belonged to the partnership on and after January 1, 1920. The petitioner continued after that date and until May 17, 1920, to hold the title thereto and to hold itself out to the world as the actual owner, and all of the circumstances surrounding the conduct of the business support the conclusion that it was in fact the owner, and the respondent properly taxed to it the income involved herein, and we so hold.

The cases cited in behalf of petitioner do not apply to the facts of this case. In *United States* v. *Jelenko*, 23 Fed. (2d) 511, the corporate entity was used merely as an adjunct to a real estate partnership and as a convenience in taking the conveying title to real estate, it had no capital paid in and no assets. The activity of the corporation was practically nil.

The *Thorkildsen* case, 2 B. T. A. 570, was a question of the allowance of a loss sustained on shares of stock in a corporation. The

taxpayer bought up a large acreage of mineral leases and, in order to secure certain leases held by a corporation, bought its entire capital stock. In subsequent mining operations he disregarded the corporate entity and ultimately abandoned the lease, which was forfeited. This left the corporation with no assets or property of any kind and the stock was worthless. The loss thereon was allowed as a deduction. The distinguishing feature between that case and this case is that Thorkildsen never operated the corporation, while in this case the Broadway Strand Theatre was always operated as such.

In *Patterson Produce Co.*, 4 B. T. A. 950, the corporation failed and liquidated its business by turning over all its property and accounts to its creditors. Subsequently, a partnership was formed doing business under the same name, by some of the old stockholders, and it was held that its income was not income of the corporation. Clearly such a case is not decisive of the case at bar.

As an alternative proposition, petitioner urges that its accounts and those of the Ferry Field Theatre be consolidated pursuant to the provisions of section 240 (d) of the Revenue Act of 1921, the pertinent part of which is as follows:—

\* \* \* That in any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the Commissioner may consolidate the accounts of such related trades and businesses, in any proper case, for the purpose of making an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses.

The above provision appears for the first time in the Revenue Act of 1921 and the reason therefor is set forth in Report No. 275 of the Committee on Finance:

A new subdivision is added to this section giving the commissioner power to consolidate the accounts of related trades or businesses owned or controlled by the same interests, for the purpose only of making a correct distribution of gains, profits, income, deductions, or capital, among the related trades or businesses. This is necessary to prevent the arbitrary shifting of profits among related businesses, particularly in the case of subsidiary corporations organized as foreign trade corporations.

There is thus given to the respondent the authority in a proper case to consolidate accounts. Counsel for respondent contends that inasmuch as the respondent, in his discretion, has not found it necessary to consolidate the accounts, the relief requested should be denied. We are not convinced that the mere failure of the respondent to exercise the power given him by statute forecloses the relief to which a given petitioner may be entitled. We may in a given case based upon proper facts be of the opinion that a consolidation of the accounts would be in order. In the case at bar we have not been convinced that the statute in question should be applied. It has not

been shown that there was such an intermingling of the accounts of the two businesses in question as would necessitate the consolidation of their accounts in order to make " an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses," or that the accounts should be consolidated to obviate the situation as pointed out in Report No. 275 of the Committee on Finance "to prevent the arbitrary shifting of profits among related businesses."

Even if the accounts were consolidated, it would be necessary to again distribute the profits and gains to each of the businesses involved and we have no proof that a consolidation of accounts would produce a different result from that obtained by the respondent.

Separate books of accounts were maintained in which were recorded the usual revenues and expenses. The mere fact that lump purchases may have been made for both businesses, especially when, as here, the purchases were allocated to each business, or the fact of an occasional exchange of an employee, without more, does not prove that this section should be invoked. An accountant for the petitioner testified that the Ferry Field Theatre Co. sustained a loss in the year 1921 of $5,696.56. If the loss could be so accurately determined and if the gross income and expenses could be so ascertained, we see no necessity for consolidating the accounts as requested.

*Judgment will be entered for the respondent.*