112 WEST 59TH STREET CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 15297.   Promulgated June 17, 1931.

*J. C. Peacock, Esq.*, and *C. E. Koss, Esq.*, for the petitioner.
*E. M. Niess, Esq.*, and *Ralph S. Scott, Esq.*, for the respondent.

768

OPINION.

McMahon: The only issue raised in this proceeding is whether the profit realized upon the sale in 1921 of the real estate located at 112 West 59th Street, New York City, was income to the petitioner. It is conceded by the petitioner that it held the legal title to the property, that it conveyed such title, that a profit of $51,547.88 resulted from the sale, and that petitioner is not an exempt corporation, but petitioner contends that it was organized as a " dummy " corporation for the sole purpose of holding the property in question, that it was an agent of, or trustee for, the Beaumont Investment Trust in the holding and sale of this property, and that the profit was not income to petitioner but was income to the Beaumont Investment Trust.

The respondent contends that petitioner obtained the property in consideration of the issuance of all its capital stock to the Beaumont Investment Trust, that petitioner received the profit from the sale of such property, that petitioner subsequently distributed this profit to the Beaumont Investment Trust as a liquidating dividend, and that petitioner is, therefore, taxable on the profit.

We may state at the outset that the petitioner has not presented us with any definite evidence as to how it obtained title to the property in question or as to the circumstances of the sale of the property in 1921. There is no evidence as to any trust or agency agreement between the petitioner and the Beaumont Investment Trust, and we see no merit in petitioner's contention that petitioner was agent of or trustee for the Beaumont Investment Trust. Petitioner's contention is that under the law of New York there was a resulting trust in favor of the Beaumont Investment Trust, based upon the hypothesis that the property was purchased with funds of the Beaumont Investment Trust although title was taken in the name of the petitioner. The evidence before us does not sustain this position. So far as we are able to determine from the record the property was purchased by Louis D. Beaumont on behalf of the Beaumont Investment Trust, was later sold to petitioner in a formal manner, and all

the capital stock of petitioner was issued to the Beaumont Investment Trust in part payment therefor. Apparently the petitioner continued to owe the Beaumont Investment Trust a part of the purchase price. These facts distinguish the instant proceeding from the numerous cases of the courts of New York, cited by petitioner.

Petitioner argues that the books of account of the Beaumont Investment Trust sustain its position. We can not agree. If they are indicative of the true character of the transaction in question, we believe that they tend to support the holding of the respondent rather than the contention of the petitioner. We do not have before us the books of the Beaumont Investment Trust, but such excerpts as were put in evidence indicate that there was capitalized in the accounts of the Beaumont Investment Trust an amount of $1,000 for 10 shares of the capital stock of the petitioner and that the petitioner was charged in an open account receivable with an amount of $142,468.08, being the balance of the purchase price of the realty in question after deducting $1,000 charged to the investment in the capital stock of the petitioner, plus certain expenses, interest, etc., incident to the acquisition of the property. They show that in 1921, when the property was sold, the investment of the Beaumont Investment Trust in the capital stock of the petitioner was transferred to the open account receivable against the petitioner, that the proceeds of the sale were credited to this account receivable, and that the resulting credit balance of $51,547.88 attributed on the books to the net profit on the sale of the property, was then transferred, first, to an account called "miscellaneous profits," and, at the end of the year, from this account to the account reflecting income and expenditures of the Beaumont Investment Trust.

Frederick D. W. Searing testified at the hearing that he has never resigned as president of the petitioner, that he acted as a "dummy officer" of a number of corporations, resigning as such to make way for the real officers when his resignation was asked, that he as an employee of the law firm of Rose & Paskus, did as he was told in such corporate matters, that he knows nothing of the business of the petitioner, but presumes that it was organized to hold the property in question, that he permitted his name to be used as president, that he believes that once or twice he signed waivers of notices of meetings, that he probably signed, in 1921, the deed transferring title to the property in question, that he knows nothing of any assets or books of account of the petitioner, that he does not know how petitioner obtained title to the property, and that he does not know whether or not petitioner received the proceeds from the sale of the property in question.

The evidence tends to indicate that petitioner was formed for the sole purpose of taking title to the property in question, but the fact remains that petitioner was a legal entity separate from its stockholder, the Beaumont Investment Trust. It is our opinion that we may not, in this proceeding, ignore the separate corporate identity of the petitioner. See *Regal Shoe Co.*, 1 B. T. A. 896; *Waldron Co.*, 2 B. T. A. 715; and *Broadway Strand Theatre Co.*, 12 B. T. A. 1052. In the last cited case we stated in part:

* * * The mere fact that Gleichman owned or controlled the entire capital stock did not dissolve the corporation, nor did the failure to hold corporate meetings or declare dividends impair its existence. It was impossible to conduct the business without the corporation for it held the lease on the theatre and owned all the property therein. Gleichman and his attorney both testify that the corporation was continued in order to hold the lease and to relieve Gleichman from personal liability. Under these circumstances, we hold that the income in question was that of the corporation petitioner. Where a corporate cloak is resorted to for its business benefits, the burdens, if any, must also be assumed. * * *

Section 230 of the Revenue Act of 1921 provides that there shall be levied, collected, and paid for each taxable year a tax upon the net income of every corporation.

The separate existence and entity of the corporation is generally recognized and preserved by the courts.

In *Eisner* v. *Macomber*, 252 U. S. 189, the Supreme Court stated in part:

When a corporation earns profits, it receives money over the amount of its expenditures. The money belongs to the corporation; the profits are the property of the corporation. If the corporation distributes its earnings in dividends, properly so-called, that is, in money, or in property in specie, the stockholder has realized a gain and that gain is income. The shareholder has simply his share, his interest, in the corporate enterprise. *The corporation must, of course, pay its income tax upon its profits,* but there is no income to the shareholder unless he receives it. His share interest is a capital interest. *This distinction is not a form or technicality. It is a vital distinction inherent in corporate organization. The interest of the shareholder is a distinct interest. The profits of the corporation are not his profits. This distinction between the title of a corporation and the interest of its shareholders in the property of the. corporation, including its earnings, has been authoritatively established.* * * * [Italics supplied.]

In *People* v. *Williams*, 198 N. Y. 54; 91 N. E. 266, the Court of Appeals of New York held that under the State law providing that every corporation shall pay an annual tax computed upon the basis of the amount of its capital stock " employed " within the State, the capital stock of a corporation represented by several pieces of real estate owned by it is " employed " and that the corporation is liable for the tax though it is really merely a holding corporation for an

individual, and is merely employing the property as he would have employed it had the title to the property remained in him. The court stated in part:

It is argued that the statute should be construed so as to exempt the relator from this tax, because if we look behind the corporation to the owner, Senator Clark, he has received no advantage for which the tax might be said to be due. He has personally paid the tax upon the real estate, and also the organization tax for the corporation, and it is contended that it is inequitable and unjust to require him to pay any more, inasmuch as he has received no equivalent from the state. The obvious answer to this argument is that he has chosen, for some undisclosed reason which he denominates his personal convenience, to transfer his property to a corporation which appears to be employing that property just as he would employ it if the title remained in himself, and that when capital is thus employed, the Legislature of the state has commanded that it shall be taxed in this manner. There is no apparent hardship in compelling a person to pay for employing his capital through an agency of a corporation, if he sees fit to organize one for his own convenience. Even if there were, this would be a matter for the consideration of the Legislature, and not for the courts.

Sometimes the courts will ignore the corporate entity, but chiefly in cases of fraud. The exception to the general rule that the courts will not ignore the corporate entity is well stated by the United States Supreme Court in *McCaskill Co.* v. *United States*, 216 U. S. 504, as follows:

\* \* \* Undoubtedly a corporation is, in law, a person or entity entirely distinct from its stockholders and officers. It may have interest distinct from theirs. Their interests, it may be conceived, may be adverse to its interest, and hence has arisen against the presumption that their knowledge is its knowledge, the counter presumption that in transactions with it when their interest is adverse their knowledge will not be attributed to it. But while this presumption should be enforced to protect the corporation, it should not be carried so far as to enable the corporation to become a means of fraud or a means to evade its responsibilities. A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it and to the officers who are identified with that purpose.

The petitioner cites *United States* v. *Jelenko*, 23 Fed. (2d) 511, decided by the United States District Court for the District of Maryland. The facts in that case were, briefly, as follows: Jelenko and Rosenstock were partners in the real estate business. For convenience, they formed a corporation to hold its real estate and certificates of stock in the amount of $1,000 were issued to the partners in equal shares. No money was paid for this stock, and no other stock was ever issued. No directors' or stockholders' meetings were ever held, no corporate books or records were ever made or kept, and no salaries or dividends were ever paid. The corporation never was possessed of any money, unless, as the court says, a bank account referred to was in reality that of the corporation. All the capital

deposited in this account was contributed by the partners, and the corporation did not give in return therefor any evidence of indebtedness. The Commissioner attempted to hold the partners liable as transferees of the assets of the corporation for the tax alleged by the Commissioner to be due from the corporation. In holding that the business was not that of the corporation, that it received no income, that no tax was due from it, and that the partners were not liable for the asserted liabilities, the court said in part:

\* \* \* The contention that it was in law the business of the corporation, and that the defendants were its stockholders, or creditors, can be maintained only if it is found that the money in the Old Town Bank belonged to the corporation, and the books of account were its books, although kept in the name of the firm. Otherwise, the corporation was only a legal concept, a name to be used as a business convenience, with no means to conduct substantial transactions in real estate. But the facts in connection with the moneys on deposit and the books of account are not consistent with the theory of corporate ownership. It would be, in the opinion of the court, a forced construction to hold that the mere grant of a corporate charter, and the occasional use of the corporate name, so changed the legal situation that the business became corporate in law, although the activities of the defendants were continued as theretofore in the partnership relation.

The case of *United States* v. *Jelenko, supra*, as far as we can determine, is not distinguishable from the instant proceeding, but we find ourselves unable to agree with the learned District Court. In the instant proceeding the corporation itself is contending that we should close our eyes to the fact that it was an entity separate from its stockholder. As stated in *Broadway Strand Theatre Co., supra*, where a corporate cloak is resorted to for business benefits, the burdens, if any, must also be assumed.

We have not overlooked *Stewart Forshay*, 20 B. T. A. 537. In our view, it is distinguishable from the instant proceeding.

The petitioner points to the facts that the Beaumont Investment Trust, in its return for the year 1921, reported the profits on the transaction in question and that it was taxed to it. However, we are bound by the principles of law set forth above and are constrained to hold that, irrespective of whether a mistake has been heretofore made in respect of that tax, the petitioner is liable for the tax in question.

We conclude that the respondent did not err in taxing to the petitioner the profit of $51,547.88.

The propriety of the respondent's action in asserting against petitioner a 25 per cent penalty for failure to file a return for the year 1921 not being questioned, and there being no evidence in this regard, this action of the respondent is also approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

GOODRICH, dissenting: It seems clear to me that this corporation was a mere " dummy " corporation, organized at the instance of and used by the Beaumont Investment Trust as an agency to hold title to and facilitate the management and sale of certain real property, the beneficial interest and equitable title to which were held by the Trust. All of the capital stock of the corporation, which was merely nominal, was issued to and held by the Trust, with the exception of the qualifying shares which stood in the names of persons in the offices of the attorneys employed by the Trust. These persons also served as " dummy " officers of the corporation, but had no part in the management of its affairs, this being done entirely by the Trust, or its attorneys at its request. All income received by this " dummy " corporation was paid over to the Trust, which accounted for the same in its own tax return. Under these facts, it is my opinion that the corporate entity should be disregarded and that any income from the property held in the name of the corporation should be regarded as belonging to the Trust, and I therefore dissent from the opinion of the majority in this case. See *Stewart Forshay*, 20 B. T. A. 537, and *United States* v. *Jelenko*, 23 Fed. (2d) 511.

BLACK and MATTHEWS agree with this dissent.