FLAMBEAU PUBLIC SERVICE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLAMBEAU PAPER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 36716, 36717. Promulgated December 14, 1932.

*Frederic Sammond, Esq.*, for the petitioners.
*W. Frank Gibbs, Esq.*, for the respondent.

OPINION.

McMahon : In both petitions herein it is alleged that substantially all of the common stock of the Paper Company, Realty Company and Power Company is now and was during all of 1923 owned or controlled by the same interests and that the Paper Company owns directly all of the stock of the Public Service Company. The respondent admitted such allegations in both answers.

Petitioners on brief state that, because the facts necessary to constitute affiliation under the Revenue Act of 1921 are pleaded and are admitted by the respondent, it is, "therefore, undisputed that Wisconsin Realty Company and Flambeau Power Company, and both petitioners were affiliated during 1923." The respondent in his brief states that the:

\* \* \* statement of facts shows conclusively that the four companies involved in these proceedings meet the statutory requirements for affiliation within the meaning of Section 240 of the Revenue Act of 1921, since the petition alleges and the answer admits that "substantially all of the common stock of the Flambeau Paper Company, the Wisconsin Realty Company and the Flambeau Power Company is now and was during all of 1923 owned or controlled by the same interests and the Flambeau Paper Company owns directly all of the stock of the Flambeau Public Service Company."

In view of the position taken by the parties and of our disposition of the issues raised, we deem it unnecessary to determine whether or not the four companies were affiliated.

However, the respondent, although admitting the affiliation of the four corporations, contends that the petitioners elected to file separate returns for the year 1922 and, therefore, having made an election to file separate returns for such year, under section 240 (a) of the Revenue Act of 1921,[1] returns must be made upon the same basis for the year 1923 unless permission to change the basis is granted by the Commissioner.

It appears that the question of the affiliation of the two petitioners and the Realty Company during the years 1917, 1918, 1919, 1920 and 1921, was before the Commissioner for consideration prior to 1922, and that the respondent by letter dated November 19, 1921, advised the Paper Company that it and the Public Service Company were affiliated for the years 1918, 1919 and 1920, but that the Realty Company was not so affiliated. While the affiliation issue of prior years was still pending, and before the income tax returns for 1922 were filed, E. P. Sherry, president of the four companies involved, by letter under date of February 20, 1923, in behalf of the Paper Company, requested a ruling from the Bureau of Internal Revenue as to the "necessity or possibility of filing a consolidated income tax return" for the four companies. In reply to this letter, under date of March 8, 1923, the Paper Company was advised by the respondent that, during the year 1922, it and the Public Service Com-

---

[1] Sec 240. (a) That corporations which are affiliated within the meaning of this section may, for any taxable year beginning on or after January 1, 1922, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return is made on either of such bases, all returns thereafter made shall be upon the same basis unless permission to change the basis is granted by the Commissioner.

pany were affiliated within the purview of section 240 of the Revenue Act of 1921 and could elect to file a consolidated income tax return for that year, but that during such year the Realty Company and the Power Company were not affiliated with any of the companies named or with each other, and such companies should file a separate return. Within a few days thereafter all four companies filed separate returns for the year 1922. In March, 1924, the petitioners and the Realty Company filed an amended consolidated return for the year 1922 and also a consolidated return for the year 1923, with the letters under date of March 12, 1924, which are set forth in our findings.

The petitioners contend that the ruling of the respondent with respect to 1922 " effectively and legally deprived the petitioners of all choice, option or election "; that in filing separate returns for 1922 they did not make an election under the law, but filed such returns pursuant to respondent's ruling; and that they were justified in accepting the respondent's specific instructions.

The petitioners rely mainly on the case of *Dexter Sulphite Pulp & Paper Co.*, 23 B. T. A. 227, in which the Board held that the filing of a separate return by one company under the peculiar facts in that proceeding was not an exercise of the option provided by section 240 (a), 1921 Act. However, that case is not controlling here and is distinguishable for the reason that it was impossible for taxpayer in that case to determine the fact of affiliation, because of litigation arising from the repudiation of a contract involving the properties of the Dexter Company and ownership of stock of subsidiaries, which litigation was instituted in 1921 and continued through 1922 and 1923. Such is not the situation here. As far as appears from the record, there was nothing which prevented the petitioners from determinining the status of the companies and from exercising their option either to make separate returns or a consolidated return, except the respondent's letter of March 8, 1923. In our opinion, the respondent's ruling did not deprive the petitioners of their right of election under section 240 (a). *Pictorial Review Co.*, 26 B. T. A. 472; *Radiant Glass Co.*, 16 B. T. A. 610. In *Radiant Glass Co.*, *supra*, the petitioner based the deprivation of its right of election in 1922 on the Commissioner's ruling of nonaffiliation for 1921. An appeal was taken to the Court of Appeals of the District of Columbia, and the court, in *Radiant Glass Co.* v. *Burnet*, 54 Fed. (2d) 718, 719, affirmed the decision of the Board and in its opinion stated the following:

When appellant came to make out and file its return for the year 1922, it was entitled, if affiliated with the Times-Record Company, to file either a separate or consolidated return. The ruling of the Commissioner upon the

questionnaire in the prior years did not prevent or impair the free exercise of that right. *Such a ruling does not have the force of law; nor are the courts bound by it. United States v. Hurst,* D. C. 2 F. (2d) 73. *The status of affiliated, to file a consolidated return if it so elected, and to appeal to the courts, and not by the Commissioner. Fidelity Nat. Bank* v. *Commissioner* (C. C. A.) 39 F. (2d) 58, 61. *Accordingly it was the right of appellant, if affiliated, to file a consolidated return if it so elected, and to appeal to the Board of Tax Appeals and to the courts for a judicial determination of its rights.* * * * [Italics supplied.]

Although the Commissioner's ruling in this proceeding applied to the taxable year in question, nevertheless, in our opinion, such ruling did not deprive the petitioners of their right of election.

There is no evidence that the petitioners, or E. P. Sherry, president of all the companies, were so influenced by the rulings of the Commissioner relative to 1922 or previous years as to deprive them of their right of election. On the contrary it appears that the ruling of the Commissioner was not considered binding upon them, as separate returns for the year 1922 were first filed in behalf of the Paper Company and the Public Service Company instead of a consolidated return as permitted under such ruling. Furthermore, E. P. Sherry testified that he could not recall the circumstances relative to the filing of separate returns for 1922 for the Paper Company and the Public Service Company instead of filing a consolidated return for such companies, and testified further that, " In 1924, when we were considering the matter again " the amended consolidated return for the year 1922 was filed.

Even if we were of the opinion that under the facts herein the petitioners were deprived of their right of election under section 240 (a) of the 1921 Act, and that the filing of the amended consolidated return for 1922 by the petitioners and the Realty Company and the consolidated return for 1923 by the same companies in March 1924, constituted an election, nevertheless, it would be necessary for the petitioners to file separate returns for such years, as the Power Company filed a separate return for both 1922 and 1923. Where one corporation which is a member of an affiliated group files a separate return, the remaining corporations may not file a consolidated return of their income, but must also file separate returns. *Fontana Union Water Co.,* 24 B. T. A. 1045; *Southern Power Co.,* 17 B. T. A. 962; affd., *Duke Power Co.,* 44 Fed. (2d) 543; *Apartment Corp.,* 17 B. T. A. 876.

The amended consolidated return for 1922 was filed by the petitioners and the Realty Company. The Power Company was organized in May, 1922, and filed a separate return for 1922. Again, for the year 1923 the petitioners and the Realty Company filed a consolidated return and the Power Company filed a separate return. A consolidated return must include the income of all members of an

affiliated group and one member of the group may not file a separate return and the others a consolidated return. The fact that the power Company was organized in May, 1922, and therefore could have been affiliated for only a part of a year, is immaterial. *Lucas* v. *St. Louis National Base Ball Club*, 42 Fed. (2d) 984; certiorari denied, 282 U. S. 883; *A. S. Siracusa Sons, Inc.*, 23 B. T. A. 53.

The petitioners, having elected in 1923 to make separate returns for the year 1922, can not thereafter change the basis by filing an amended return for the same year and can not change the basis for subsequent years by filing a consolidated return, without permission of the Commissioner. *Pictorial Review Co., supra; Pine Ridge Coal Co.*, 23 B. T. A. 489, 491, 492, and cases cited therein.

The petitioners contend in the alternative that the accounts of the petitioners, the Realty Company and the Power Company should be consolidated, under section 240 (d)[2] of the Revenue Act of 1921.

Section 240 (d) provides that accounts may be consolidated for the purpose therein stated " in any case of two or more related trades or businesses * * * owned or controlled directly or indirectly by the same interests." That the four companies were owned or controlled directly or indirectly by the same interests may be assumed for the purposes of this discussion.

On brief the petitioners stated that upon hearing there was "no showing by petitioners of intercompany relations" between the Public Service Company and the other three companies as the Public Service Company " was operating· along an unrelated line of business " and was involved only because of stock ownership and that consolidation of the accounts of such company with the accounts of the other three companies was a matter of indifference to the petitioners.

Petitioners argue that the books of account do not reflect true income because the Realty Company and the Power Company were created and existed for the benefit of and to serve the Paper Company to the detriment of the Realty Company and the Power Company and that the " intercompany relations " and particularly the " intercompany leases " resulted in distortion of income.

Petitioners apparently interpret " related business " to mean " intercompany transactions " or that businesses become " related " by transactions with each other. The term " related business " was discussed in *Nowland Realty Co.* v. *Commissioner*, 47 Fed. (2d)

---

[2] Sec. 240. (d) For the purposes of this section a corporation entitled to the benefits of section 262 shall be treated as a foreign corporation: *Provided*, That in any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the Commissioner may consolidate the accounts of such related trades and businesses, in any proper case, for the purpose of making an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses.

1018; affirming *Nowland Realty Co.*, 18 B. T. A. 405. In that case the Nowland Realty Company was created for the purposes of one Schmidt, who conveyed certain real estate and other property to the corporation for stock and the corporation in turn leased certain of the realty to Schmidt. The court in its opinion states that Schmidt's individual activities were not interrelated with or interdependent upon the activities of the corporation and that:

> The statute requires that the businesses be both related and owned by the same interests. Owned by the same interests they were, but it cannot be said that the two businesses were related. "Related" means "standing in relation; connected; allied; akin.

E. P. Sherry testified that the Realty Company acquired power sites "with the idea that they would be a benefit to the Flambeau Paper Company ultimately"; that the Realty Company's investments in timber land, in lots and houses in Park Falls, most of which were rented to employees of the Paper Company, in the railroad from Park Falls to Pixley Water Power, used by the Paper Company under rental, in preferred stock of the Paper Company, in preferred stock of the Power Company, and in the collateral note of Waldo, were "the principal investments" of the Realty Company "held for the benefit of" the Paper Company. He testified that the Realty Company is "more or less a holding company" in the sense that it merely holds title to the investments referred to for the benefit of the Paper Company. That such investments were made and held "for the benefit of" the Paper Company is a conclusion of the witness.

The evidence does not support such a conclusion. The books of account of the Realty Company do not bear out this assertion. Each company kept separate books of account. There is no evidence showing that such books were inaccurate or that they did not correctly show the assets, income and expenses of each company. The books of account of the Realty Company did not show that any of its investments were made or held for the benefit of the Paper Company. The Paper Company was not a gratuitous recipient of property or money from the Realty Company or Power Company, but paid for what it received. It paid rent for the use of the railroad and for power furnished to it pursuant to agreements. It issued preferred stock for money advanced to it, upon which it paid during 1923 to the Realty Company a very substantial amount in dividends. The corporations were organized for business purposes and obviously because of certain advantages to be gained thereby. We can not disregard the separate entities of these corporations because transactions between the corporations dealing with each other as separate entities were more advantageous to one than the other. As stated in

*Broadway Strand Theatre Co.*, 12 B. T. A. 1052, where a corporate form is resorted to for its business benefits, the burdens, if any, must also be assumed. See also *Evelyn F. Gregory*, 27 B. T. A. 223, and *112 West 59th Street Corp.*, 23 B. T. A. 767.

The Public Service Company is engaged in the business of distributing electric power for light, heat and other purposes; the business activities of the Power Company consist of owning, developing and leasing water power; the Realty Company is engaged in buying and selling real estate and investments; and the Paper Company is engaged in the business of making paper. The businesses carried on by these four companies in our opinion are not related trades or businesses. Cf. *Crossett Western Co.*, 27 B. T. A. 258; *Starr Piano Co.*, 26 B. T. A. 835; *Herald News Co.*, 26 B. T. A. 688; *Western Hide & Fur Co.*, 26 B. T. A. 354; *Roessler & Hasslacher Chemical Co.*, 25 B. T. A. 915; *Nowland Realty Co.*, 18 B. T. A.. 405.

Furthermore, even if the four corporations here involved were engaged in "related trades or businesses" and entitled to the benefit of section 240 (d), it is incumbent upon them to prove facts from which the Board can make an accurate distribution or apportionment. *Starr Piano Co., supra; Herald News Co., supra; Western Hide & Fur Co., supra, Roessler & Hasslacher Chemical Co., supra; Broadway Strand Theater Co., supra.*

We turn then to a consideration of the evidence in this proceeding.

The consolidated return of the Paper Company, the Public Service Company and the Realty Company (respondent's Ex. F) and the separate return of the Power Company (respondent's Ex. E), both for the year 1923, are before us. The petitioners introduced in evidence the balance sheet and the profit and loss statement of the Realty Company (petitioners' Exs. 7 and 9) and the balance sheet of the Power Company (petitioners' Ex. 8). These statements were prepared by E. P. Sherry from the books of the respective companies. In such statements he allocated certain of the assets, liabilities, income and disbursements of the Realty Company and the Power Company, respectively, as "for the benefit" of the Paper Company. Although the totals on such statements agree with the books of account of the respective companies, such allocation does not appear in the books of account of such respective companies, but represents the opinion and judgment of E. P. Sherry, nor do the books of account of the Realty Company indicate or contain an account showing that the assets as allocated were held for the benefit of the Paper Company. On the profit and loss statement of the Realty Company it appears that 84 per cent of the "Milwaukee office expense," "General expenses" and "Interest paid" were allocated to the Paper Company. He arrived at this percentage by

determining the assets of the Realty Company which in his judgment were "held for the benefit" of the Paper Company, the book value of which assets on January 1, 1923, was 84 per cent of the total assets of the Realty Company. He testified that this ratio prevailed throughout 1923, approximately, so that, at the end of 1923, 81.6 per cent of the assets of the Realty Company "were held for the benefit" of the Paper Company and 18.4 per cent were not so held. These percentages were used in allocating such expenses. On such statement all of the railroad earnings during 1923 of $1,387.50, and a loss of $21,747.75 resulting from the abandonment of such railroad, were allocated to the Paper Company. Out of a total of $17,765, representing dividends on investments received by the Realty Company during 1923, the amount of $17,477 was allocated to the Paper Company. Nearly all of that amount represents dividends paid by the Paper Company on its preferred stock held by the Realty Company and a very small part thereof represents dividends paid by the Power Company on its preferred stock owned by the Realty Company.

On the balance sheet of the Power Company (petitioners' Ex. 8) Sherry allocated $288,555.37 out of the total assets of such company of $293,243.73 as of January 1, 1923, and $445,193.40 out of total assets of such company of $454,983.68 as of January 1, 1924, as held for the benefit of the Paper Company. The greater part of such amounts so allocated as held for the benefit of the Paper Company represents the cost of hydroelectric developments and the transmission line which were under lease to the Paper Company.

To the balance sheet of the Power Company (petitioners' Ex. 8) there is attached a statement showing that the Power Company on July 1, 1922, leased to the Paper Company for 25 years the so-called "Lower Power" and "Pixley Power" and the transmission line for an annual rental of $22,000, $24,400, and $1,200, respectively, the lessee to pay all real estate taxes and repairs. There is no evidence from which we can determine whether or not such rentals were fair or were not comparable to rentals paid for similar property by others. The only testimony in this regard is that such leases were very advantageous to the Paper Company. This is also true relative to the rent paid for the railroad.

Petitioners suggest on brief that a proper consolidation of the accounts would be to assign a percentage of the net income and net loss of the Realty Company and the Power Company to the Paper Company, but that they consider that the choice of actual methods may more properly be worked out under Rule 50.

In *Roessler & Hasslacher Chemical Co., supra*, the Board stated:

* * * Where some allocation is proper under section 240 (d) it is incumbent upon a petitioner before this Board to prove a more accurate method

of distribution or allocation than those suggested by this petitioner or at least to show sufficient justification for failure to do so. Even if every other question in this case were decided in the petitioner's favor, nevertheless, we could not make any allocation. We need decide nothing more.

In our opinion the petitioners have failed to prove a reasonably accurate method of distribution or allocation, nor have they proved sufficient facts to enable the Board to make a proper or reasonably accurate distribution or allocation. As, in our opinion, the petitioners, the Realty Company and the Power Company are not entitled to consolidation of accounts under section 240 (d), *supra*, it is unnecessary to decide the questions raised by the respondent that section 240 (d) applies only to corporations entitled to the benefits of section 262 of the Revenue Act of 1921, and that permitting the consolidation of accounts under section 240 (d) is within the sole discretion of the respondent. *Roessler & Hasslacher Chemical Co., supra.*

The determination of the Commissioner is approved in all respects except as to disallowance of a deduction in the amount of $16,509.80, representing the excess of net loss sustained by the Flambeau Paper Company in the year 1921 over the amount of such net loss applied to the taxable year 1922, as to which the Commissioner confessed error.

Reviewed by the Board.

> *As to petitioner Flambeau Public Service Company judgment will be entered for the respondent. As to petitioner Flambeau Paper Company judgment will be entered under Rule 50.*