REMCO STEAMSHIP COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CASPAR LUMBER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 57728, 57729.   Promulgated April 27, 1934.

*Stiles W. Burr, Esq.,* and *Anson Herrick, C.P.A.,* for the petitioners.

*Allin H. Pierce, Esq.,* for the respondent.

OPINION.

LANSDON: The petitioners, at the hearing and on their brief, have abandoned their contention that Redwood was affiliated with them for Federal tax purposes in the taxable years. As their first contention they now claim that a partial consolidation of their accounts with those of Redwood for the years 1926, 1927, and 1928 is necessary in order to determine the correct taxable income of each for such years. The effect of consolidation would be to increase the net loss of Caspar for 1926 and so reduce its tax liability for 1927, and at the same time decrease its operating income for each of the years 1927 and 1928. Redwood is not a party to these proceedings and the year 1926 is not involved herein, except as facts relating to Caspar's income in that year may affect the tax liabilities now in controversy. As provided in section 274 (g) of the Revenue Act of 1926,[1] in any proceeding the Board may consider facts relating to prior years if necessary to the correct redetermination of the deficiency under review. *W. C. Mitchell Co.*, 27 B.T.A. 645.

In support of their claim the petitioners rely on section 240 (f) of the Revenue Act of 1926[2] and section 45 of the Revenue Act of

[1] SEC. 274. (g) The Board in redetermining a deficiency in respect of any taxable year shall consider such facts with relation to the taxes for other taxable years as may be necessary correctly to redetermine the amount of such deficiency, but in so doing shall have no jurisdiction to determine whether or not the tax for any other taxable year has been overpaid or underpaid.

[2] SEC. 240. (f) In any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the Commissioner may and at the request of the taxpayer shall, if necessary in order to make an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses, consolidate the accounts of such related trades or businesses.

1928,[3] which they argue were enacted to relieve related concerns not affiliated under the law from any harsh consequences resulting from their inability to make consolidated returns.

This so-called relief provision appeared first in our taxing statutes as a part of section 240 (d) of the Revenue Act of 1921,[4] and apparently originally was intended to protect the revenues in situations in which the members of related groups of enterprises could not be required to file a consolidated return. Its purpose was to prevent the shifting of profits between members of such a group by the use of arbitrary prices charged by one member thereof to another. Under the Act of 1921 the taxpayer corporation had no right to ask for a consolidation of accounts, but certainly had some legal remedy for any injustice resulting therefrom when such consolidation was made by the Commissioner.

In the Revenue Acts of 1924 and 1926, Congress included in its reenactment of section 240 (d) of the Revenue Act of 1921 as sections 240 (d) and 240 (f), respectively, the additional words " and at the request of the taxpayer shall." Such language may have been so included because in 1924 the definition of affiliation was clarified to require ownership or control of 95 percent of the stock of related corporations. In identical sections 45 of the Revenue Acts of 1928 and 1932, the words added in the Act of 1926 were not included, but " the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such trades or businesses." This change in the Acts of 1928 and 1932 was made despite the fact that neither included any material changes in the requirements for consolidated returns. In our opinion there is nothing in the provision of section 240 (f) of the Revenue Act of 1926 or section 45 of the Act of 1928 that indicates Congressional intent to provide relief for taxpayers. The rule that requires liberal construction of relief

---

[3] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commisioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such trades or businesses.

[4] SEC. 240 (d) For the purposes of this section a corporation entitled to the benefits of section 262 shall be treated as a foreign corporation: *Provided,* That in any case of two or more related trades or businesses (whether unincorporated or incorporated and whether organized in the United States or not) owned or controlled directly or indirectly by the same interests, the Commissioner may consolidate the accounts of such related trades and businesses, in any proper case, for the purpose of making an accurate distribution or apportionment of gains, profits, income, deductions, or capital between or among such related trades or businesses.

provisions therefore does not apply in controversies thereunder. The taxpayer basing its appeal on such provisions must adduce convincing evidence sufficient to overcome the presumption of correctness which attaches to the determination of the Commissioner.

The facts show that Caspar sold all its output to Redwood at figures substantially in excess of the prices which the vendee paid to the Goodyear Lumber Co. for lumber of similar classes and grades. At the time the policy was adopted it was believed that Redwood was a member of the group entitled to make a consolidated return. If that had been true tax liability would not have been affected by the arbitrary prices at which Caspar sold timber to Redwood, as the artificial gains of one, if any, would have been offset by the equally artificial losses of the other.

Petitioners contend that on the record herein the situation is squarely within the provisions of the statutory provisions upon which they rely. Caspar manufactures rough lumber which Remco transports to Redwood for conversion by curing, planing, and other processes into finished products ready for sale to the retail lumber trade. In these circumstances we are of the opinion that the three concerns are related within the meaning of the law, since, in effect, they are three branches of a single business enterprise engaged in the production of finished lumber. They are owned or controlled directly by the same interests. All of the capital stock of Remco and about 90 percent of Redwood is owned directly by Caspar, a fact that fully satisfies the requirements of section 240 (f) of the Revenue Act of 1926 and section 45 of the Revenue Act of 1928.

Counsel for respondent argues that denial of a request for consolidating the accounts of two or more related trades or businesses is the exercise of a discretionary authority with which the Commissioner is clothed by act of Congress and, therefore, not subject to review by the Board. In this proceeding we have authority to redetermine the amounts of the disputed deficiencies for the years under review, as provided in section 274 (a) of the Revenue Act of 1926. It follows, we think, that in such redetermination we have authority to review any act of the Commissioner that affects the amount of a deficiency which has been determined. The situation is analogous to that in which the Commissioner denied our right to review his refusal to grant special assessment. Our authority to review that particular discretionary act was settled in *Blair* v. *Osterlein Machine Co.*, 17 Fed. (2d) 663. In its opinion in that case the Court of Appeals of the District of Columbia said:

\* \* \* The appellate power [of the Board] includes the authority not only to review, but to investigate *de novo*, the matters in controversy between the government and the taxpayer. To this end the Board may affirm, set aside,

or modify, in such manner and to such extent as it may be advised, the findings of the Commissioner.

In its opinion affirming the opinion of the Court of Appeals of the District of Columbia, the Supreme Court in *Blair* v. *Osterlein Machine Co.*, 275 U.S. 220, speaking through Mr. Justice Stone, in discussing the authority of the Board under section 274 of the Revenue Act of 1924, said:

> In the light of such provisions there is plainly no sufficient ground for reading into Section 274, allowing an appeal whenever a deficiency is found by the Commissioner, an exception based on the supposedly sacrosanct character of his determinations under Sections 327 and 328.

In our opinion the authorities above cited are sufficient answer to the respondent's argument that his denial of the right to consolidate the accounts of a related group of taxpayers is not subject to review by the Board, if such consolidation affects a deficiency subject to redetermination under section 274 of the Revenue Act of 1926.

The respondent also contends that the facts, that one of the members of the related group is not before the Board, and that one of the years for which consolidation of accounts is asked is not under review, are fatal to the contention of the petitioner. We think not. Under section 274 (g) of the Revenue Act of 1926 we have complete authority to consider facts relating to a prior year not before us, so far as they may affect the deficiencies under review, but no conclusion reached as to such facts can affect the tax liability of Caspar for any years not here in controversy or that of any other taxpayer not before us.

The evidence adduced to show the results of the alleged arbitrary prices at which lumber was sold by Caspar to Redwood is not convincing. It indicates only that Redwood, under a five-year contract, purchased about one third of the lumber used in its operations from the Goodyear Lumber Co., at rates substantially lower than cargo list or prevailing market prices. This signifies only that by agreement to take the entire output of the Goodyear Lumber Co., over a long period of time, a price somewhat below the prevailing market was obtained. By reason of such contract the vendor was able to dispose of all its products without selling cost and therefore could well afford to make price concessions over a period of five years.

The sales by Caspar to Redwood were on open account and at rates substantially equal to prevailing cargo lists and open market prices at which Redwood bought at least a third of its raw materials from outside concerns. It is clear, therefore, that the Caspar-Redwood prices followed the market. That Redwood, under a five-year contract, was able to purchase from another concern at lower rates, does not show that it suffered by its purchases from Caspar at prevailing open market prices which it could have obtained on the open

market from other concerns. In the circumstances, we cannot say that the prices at which Caspar sold lumber to Redwood should have been lower than those fixed by the president of the two concerns. Cf. *Flambeau Public Service Co.*, 27 B.T.A. 299.

The law seems to contemplate a consolidation of all the accounts of closely related enterprises. That, however, is not the claim of these petitioners. They would consolidate only those accounts which reflect sales of lumber by Caspar to Redwood. Even if such procedure is authorized by the law, it is obvious that such a partial consolidation might fall far short of an accurate distribution or apportionment of gains or profits, income, deductions, or capital as between the two concerns. The record discloses that Redwood was heavily indebted to both Caspar and Remco and that as to Remco no interest was paid. There may have been many other intercompany transactions favorable to one or another of the members of the related group. We think the purpose of section 240 (f) of the Revenue Act of 1926 can be effected only by a complete consolidation of all the accounts of the three related concerns. On this issue the respondent is affirmed. *Western Hide & Fur Co.*, 26 B.T.A. 354; *Crossett Western Co.*, 27 B.T.A. 258; *Abe Ackerman*, 27 B.T.A. 413; *Broadway Strand Theatre Co.*, 12 B.T.A. 1052.

In the year 1926 Caspar received a dividend from Remco in the amount of $50,550. In that year they were affiliated. The dividend so received was eliminated in computing the consolidated net income of the group. In an amendment to his answer the respondent now alleges that the amount of the dividend should be added to the gross income of Caspar for 1926 for the purpose of computing its statutory net loss in that year, and he has moved to increase Caspar's tax liability for 1927 and 1928 to correspond to the reduced net loss which would result from such addition to its income in 1926. In support of his contention he relies on section 206 (a) (4) of the Revenue Act of 1926.[5] He argues that the obvious purpose of this provision is that while dividends received by one affiliated corporation from another would not be subjected to tax, it must be recognized that they do increase the surplus of the recipient and must be applied to reduce the amount of the statutory net loss which it can carry into a subsequent year.

If the dividend in question had been received from a nonaffiliated corporation, there would be no question that the position of the

---

[5] SEC. 206. (a) As used in this section the term "net loss" means the excess of the deductions allowed by section 214 or 234 over the gross income, with the following exceptions and limitations:

\*　　\*　　\*　　\*　　\*　　\*　　\*

(4) The deduction provided for in paragraph (6) of subdivision (a) of section 234 of amounts received as dividends shall not be allowed.

respondent is correct. In the circumstances here it was received from a corporation owned 100 percent by the recipient and so did not increase the consolidated gross income for tax purposes. Respondent argues that consolidated returns are permitted only for tax-computing purposes and that it is well settled that otherwise each member of an affiliated group must be regarded as a separate entity, as held in *Woolford Realty Co.* v. *Rose*, 286 U.S. 319. He also points out that the statutory provision upon which he relies is specific and unambiguous and makes no distinction between dividends received from affiliated and nonaffiliated corporations.

The only question here is the correct method of computing the statutory net loss of Caspar for 1926, which may be carried forward in the computation of its tax liability for 1927 and 1928. The consolidated net loss of a group of corporations may not be carried forward to apply against the consolidated net income of the same group in the next year. *Woolford Realty Co.* v. *Rose, supra.* The net operating loss of the whole group must first be determined and the total thereof then prorated among the losing members thereof in proportion to their respective losses. The separate net losses so determined are then carried forward and applied severally against the income of each in the succeeding year. *Kaiwiki Sugar Co.* v. *Burnet*, 63 Fed. (2d) 822. We are not concerned with consolidated net loss sustained by the affiliated group in 1926, but with the individual net loss of Caspar, which may be applied to its individual income in 1927 and 1928 for the purpose of computing its taxable income for those years. It is obvious that as a business entity Caspar's operating loss in 1926 was reduced by the amount of the dividend which it received from Remco in that year. On this issue we approve the contention of the respondent and grant his motion for an increased deficiency.

In 1926 Caspar owned 448 shares of the preferred stock of Redwood for which it had paid $44,800. In that year Redwood had an accumulated deficit of $258,577.45, but it paid dividends on its preferred stock in the amount of $17,000, of which Caspar received $3,173.33. It is obvious that the amount received by Caspar was a distribution of the capital of Redwood and a nontaxable return of capital to Caspar and, therefore, not an element in the computation of net income or net loss in the year in which it was received. On this issue the determination of the respondent is reversed.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

GOODRICH concurs in the result.