## The Autocar Company, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 60565.   Promulgated October 17, 1934.

*J. Marvin Haynes, Esq., W. C. Magathan, Esq., C. J. McGuire, Esq.,* and *Albert B. Maris, Esq.,* for the petitioner.

*James C. Maddox, Esq.,* for the respondent.

362

OPINION.

SMITH: The petitioner contends that the income and losses of the members of the affiliated group should be redetermined for the years 1926, 1927, and 1928, and that the net losses as redetermined should be carried forward and allowed as deductions in 1928 in accordance with the provisions of section 117 of the Revenue Act of 1928. It contends that the net income of the several affiliated companies as shown in the deficiency notice is not the correct taxable income of such companies, since it includes the gains from intercompany transactions, viz., the sale of trucks and parts by the petitioner to the subsidiary companies; that the amounts at which such sales were made and entered in the accounts of the several companies were not true sale prices and did not reflect the true income or losses of the several companies; and that such transactions should be eliminated in computing the income and losses of the several companies and of the consolidated group for each of the years 1926, 1927, and 1928.

Except for the net loss provision of the statute, the allocation among the several companies of the income or losses of the affiliated group would not affect the consolidated income or, loss or the tax liability of the consolidated group, because the increase in the income of one company would be offset by an increase in the loss of another. Since, however, the net losses of the several companies can be availed of as a deduction in subsequent years only by the separate companies sustaining such prior net losses, *Woolford Realty Co.* v. *Rose*, 286 U. S. 319, it becomes necessary to determine the correct income or loss of each company for 1926 and 1927 in order to ascer-

tain the correct separate incomes and losses and the correct consolidated net income or loss for the year 1928.

According to the books kept by the petitioner and its subsidiary companies and the income tax returns filed by them, the petitioner had a large income in each of the years 1926, 1927, and 1928, while three of the subsidiaries had large losses in each of the years and one of them had a loss in 1926 and a small income in 1927 and 1928. The respondent has determined the same amount of consolidated income or loss as that reported in the returns for the years 1926 and 1927, but has made a reallocation of the separate income and losses for the several companies for each of the years 1926, 1927, and 1928, as shown above. In his deficiency notice the respondent states that such reallocation was made in · accordance with General Counsel Memoranda Nos. 8132 and 8618, by eliminating from the income and deductions of each company only the unrealized intercompany profits and losses. The respondent stated in his deficiency notice that the petitioner's contention for the elimination of all intercompany transactions was denied. The petitioner contends in this proceeding that all intercompany transactions, consisting, in so far as here material, of only the sales of trucks and parts by the petitioner to the subsidiary companies, should be eliminated, with the result that the petitioner would show no net income or loss for any of the years 1926, 1927, and 1928, and the consolidated net losses or incomes would all be allocated to the subsidiary companies. If this were done, all or a large part of the consolidated net loss for 1926 might be carried forward and deducted in computing the net incomes of the subsidiary companies and the consolidated income for 1928.

The petitioner argues that the intercompany transactions should be eliminated for the reason, among others, that the subsidiary companies are merely sales agencies of the petitioner and that the intercompany transactions were not conducted at arm's length so as to reflect true profits and losses to any of the companies. This is substantially the contention that was made by the taxpayer in *Post & Sheldon Corporation*, 28 B. T. A. 26. We there held, in accordance with the taxpayer's contention, that in computing consolidated net income for 1928 of affiliated corporations having prior net losses, intercompany transactions which in any way affect the total net income or the separate net income or apportioned tax of any member must be eliminated. That case, however, was reversed by the Circuit Court of Appeals for the Second Circuit in *Helvering* v. *Post & Sheldon Corporation*, 71 Fed. (2d) 930. The court there held that article 734 of Regulations 74, which provides that the consolidated taxable income of affiliates shall be .their combined in-

come, subject to the elimination of intercompany transactions, " must be read in subjection to the limitations already imposed upon the ' carry-over' sections; and that the position of the Treasury is a corollary of the decision in *Woolford Realty Co.* v. *Rose, supra,* (286 U. S. 319)."

The instant case is not distinguishable in principle from the *Post & Sheldon* case and in the circumstances we feel constrained to follow the court in its reversal of our former position. The petitioner's contention that the intercompany transactions for all of the years involved should be eliminated in computing the taxable income of the affiliated group for 1928 is not sustained.

The petitioner contends, in the alternative, that the income of the several affiliated companies should be redetermined in accordance with the provisions of section 45 of the Revenue Act of 1928. This section reads as follows:

SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more trades or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income or deductions between or among such trades or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such trades or businesses.

We think that this contention must likewise be denied. Even if this provision of the statute were construed as intending to apply to a situation such as the one under consideration, the evidence of record does not offer any basis for a reallocation of the income or deductions of the several companies. It seems to us that it would be entirely unreasonable and arbitrary to allocate all of the income and losses to the subsidiary companies, as the petitioner would have us do. No facts are given us from which we can determine that the income or losses of the several affiliated companies were other than those shown in their books and reported in their income tax returns. It appears that the respondent has computed the tax liability of the several companies and of the consolidated group in accordance with those figures, with, in some instances, a reallocation of the income and losses among the several companies. The evidence before us does not show that the respondent's reallocation of income and losses or his determination of the petitioner's tax liability for the year 1928 was in error. See *Broadway Strand Theatre Co.*, 12 B. T. A. 1052; *Western Hide & Fur Co.*, 26 B. T. A. 354; *Flambeau Public Service Co.*, 27 B. T. A. 299; and *Drawoh, Inc.*, 28 B. T. A. 666.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MATTHEWS, dissenting: I think this is clearly a case where section 45 of the Revenue Act of 1928 and section 240 (f) of the Revenue Act of 1926 should be applied. The real profit to the business in this case is the difference between the cost of manufacture plus the cost of selling and the selling price. The subsidiaries were wholly owned by petitioner and had a nominal capitalization. They were used by petitioner as sales and service branches. The accounts of the subsidiaries were guaranteed by petitioner and at the end of the years 1926, 1927, and 1928 the accounts receivable of the subsidiaries due the parent corporation were considerably over $11,000,000. The purpose of the list price at which trucks were charged to the subsidiaries was to obscure the cost of manufacture from the sales department, and to form the basis on which such department might figure a price to the customer. But the price to the customer had to be finally approved by the petitioner.

There were no real sales between the parent corporation and its subsidiaries. The real sales were to the customers. Petitioner did not expect, and subsidiaries could not have paid the parent, any more than was charged the customer. The difference between the cost of manufacture and operation of the subsidiaries and the selling price represents the profit or loss of the whole enterprise. And as the receipts of the branches, over expenditures for pay roll and supplies needed for operation, are transferred to petitioner in units of $1,000, as balances are accumulated, whatever profit there is in the sales of the trucks to customers, is in fact received by petitioner. For these reasons I think the income for 1926 and 1927 should be determined after consolidation of accounts, and for 1928 in accordance with section 45. Cf. *Roessler & Hasslacher Chemical Co.*, 25 B. T. A. 915.

GOODRICH and LEECH agree with this dissent.