DRAWOH, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SREDIES, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

REHTAM, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 45014–45016.   Promulgated July 18, 1933.

*Ward Loveless, Esq.*, *Geo. M. Wolcott, Esq.*, and *D. D. Stansbury, Esq.*, for the petitioners.

*C. H. Curl, Esq.*, *D. H. Greene, Esq.*, and *T. M. Thorn, Esq.*, for the respondent.

674

676

OPINION.

BLACK: The issues raised by the pleadings may be summarized as follows:

(1) The Commissioner erred in imposing the fraud penalties.

(2) The Commissioner erred in disallowing certain deductions taken by petitioners in 1926 and 1927, representing amounts which petitioners had paid certain of their officers and employees as alleged salaries and bonuses, said payments being alleged as reasonable compensation for services actually rendered.

(3) The Commissioner erred in adjusting and prorating certain expenses among the several petitioners in accordance with alleged agreements filed with the Commissioner by petitioners.

(4) To the above issues may be added the issue raised by the Commissioner in the affirmative allegations of his amended answer, wherein he asks that the deficiencies in the case of Seiders, Inc., Docket No. 45015, be increased because of certain allegations made in detail in said amended answer.

We will take up these issues separately and discuss them in their order.

(1) *Fraud.*—At the hearing the Commissioner conceded that the imposition of fraud penalties against Howard, Inc., was error. Effect to this admission will be given in a recomputation under Rule 50. The answer to the question whether fraud penalties should be imposed against Seiders, Inc., and Mather & Co., it seems to us depends upon whether the so-called "Big Plan" or "Turnover Plan" detailed in our findings of fact was entered into in good faith by the parties, or whether the whole thing was a mere scheme and a sham to evade income taxes. While it is of course lawful for taxpayers to use means and methods which are legal and not tainted with fraud to avoid taxes, *Brillen* v. *State of Wisconsin*, 240 U.S. 625; *Isham* v. *United States*, 17 Wall. 496, it is never lawful for taxpayers to use methods of concealment and deception to evade taxes. It is in the use of the latter methods that taxpayers run afoul of the fraud penalties. In asserting fraud penalties the burden of proof to show fraud is placed upon the Commissioner by section 907 (a), Revenue Act of 1924, as amended by section 601, Revenue Act of 1928. This burden of proof must be sustained by a preponderance of the evidence and by evidence which is clear and convincing. *In re Locust Building Co.*, 299 Fed. 756. In discussing the rule applicable to fraud cases, the court there said:

The general rule is that fraud must be made out by a preponderance of evidence, which should be so clear and strong as to preponderate over the general and reasonable presumption that men are honest and do not ordinarily commit fraud or act in bad faith. 27 C.J. 62. And in Wigmore on Evidence, vol. 4, § 2498, alluding to the rule that in civil cases a preponderance of evidence is sufficient, he states that a stricter standard is applied in cases of fraud. He says:

"But a stricter standard, in some such phrase as 'clear and convincing proof,' is commonly applied to measure the necessary persuasion for a charge of fraud and in a few related classes of cases."

In several cases the Board has applied and followed substantially the same rule as laid down by the court in the above quotation. Cf. *George L. Rickard*, 15 B.T.A. 316; *M. Rea Gano*, 19 B.T.A. 518; *L. Schepp Co.*, 25 B.T.A. 419.

In the instant case there appears to be no doubt that the members of Group I, officers and employees of petitioners, in good faith entered into a plan with Seth Seiders, acting for himself, and the three petitioner corporations, by which Seiders was to receive a million dollars from the businesses and then retire and turn the corporations over to the management of Group I. The object of this plan, as contended by petitioners, was to inspire all employees to render to the three corporations the most efficient services of which they were capable and to establish a definite means whereby the employees would be rewarded, within the bounds defined, in proportion to their loyalty and contributions to the success of the businesses—a definite system under which employees would progress through the organizations from the status of employees to that of owners, and thence to financial independence and retirement from active business. Whether Seth Seiders entered into this arrangement with the same good faith as these members of Group I is not so clear. He did not testify at the proceedings and his version of the arrangement is not before us.

Respondent's contention that the " Big Plan ", or the " Turnover Plan ", as it was sometimes referred to in the testimony, or the "Automatic Estate Building Plan", as it was referred to in the written drafts of the plan which were drawn up by Tague and Seth Seiders' father, but never signed by the parties, was a mere sham to help Seth Seiders evade his income taxes, was not borne out by the testimony. The evidence seems to establish with at least a fair degree of certainty that the members of Group I entered into this " Big Plan " in good faith. They evidenced this good faith by having elaborate details of the plan reduced to writing in two tentative drafts, both of which are in evidence in this proceeding, although neither was ever finally agreed upon and signed by the parties.

Also, the good faith of members of Group I is evidenced by their entering into insurance agreements with each other by which it was agreed that if any member of Group I should die or become incapacitated prior to the time that Seth Seiders had accumulated his million dollar estate out of the business, the estate of each of the parties so deceased or incapacitated should receive $100,000 as provided therein. These insurance agreements are referred to in our findings of fact. Other evidence of the good faith of members of Group I could be cited from the testimony.

Upon this issue of fraud, we must reach our conclusion not on isolated bits of testimony, but upon the whole record. As we said in *L. Schepp Co.*, *supra:*

* * * The question is whether upon the entire record properly before the Board the conclusion is fairly to be drawn that fraud was committed. Doubts and omissions are to be held against respondent. His is the risk of failure—not of failure to bring forward enough witnesses or enough testimony through his own witnesses, but of failure to submit a record of persuasive evidence of fraud. His risk is only that the truth may be contrary to his determination, not that he or his organization may not have been aware of it. If the weight of all the valid evidence properly in the case is such as to establish fraud, his burden is discharged; and it matters not by which of the opposing parties the evidence was introduced or in what order it was received. Adjective considerations of convenience as to the order of proof may arise at the trial, but they do not affect the ultimate question whether the evidence adequately supports the respondent's determination.

We think that, taking into consideration all the evidence, both that introduced by respondent and that introduced by petitioner, we must hold that respondent has failed to establish fraud by a preponderance of the evidence. Of course it may well be conceded that, looking back from a distance of seven or eight years, as we can now do, and after the castles in the air builded by Seth Seiders and his associates have collapsed, the so-called " Big Plan " appears more or less grotesque. No doubt the fruits of the " Big Plan " appeared in reasonable prospect at the time the parties designed it. Our task is to place ourselves where they then stood—to sit where they sat and not to judge by what has transpired after a lapse of seven or eight years. When we consider that the gross sales of these three petitioner corporations in 1926, the year when the so-called " Big Plan " was adopted, were $1,677,306.22, and large profits were being made, the " Big Plan " does not appear so ridiculous after all. On the issue of fraud penalties, we hold for petitioners.

(2) *Disallowance as deductions of so-called salaries and bonuses.*— As has been pointed out in our findings of fact, the petitioners, Seiders, Inc., and Mather & Co., paid certain sums of money to members of Group I which the members of that group did not

retain but turned over to Seth Seiders, president of all three corporations, as fast as received, as payments under the so-called "Big Plan." These sums the respective corporations paying them claimed as deductions for business expenses. As to these payments petitioners contend that they represented reasonable compensation for services performed by the five individuals to whom they were paid and should be allowed as deductions. Respondent in his determination of the deficiencies prorated these so-called salaries and bonuses to the three corporations in proportion to the amount of annual business transacted by each and then disallowed such payments as deductions. We approve respondent's action in disallowing these deductions. The validity of respondent's action in prorating a certain part of these so-called salaries and bonuses to Howard, Inc., although Howard, Inc., had paid none of them and had claimed none of them as deductions, will be discussed under issue (3).

Petitioners argue that these salary and bonus payments in question should be treated in the same way and allowed as deductions as were the $15,000 ($290 per week) payments which were paid to each of the members of Group I as salaries and retained by them. One of the principal arguments used by petitioners as to why this should be so, is that in 1925, the year prior to the putting into effect of the "Big Plan", large bonuses were paid to members of Group I by the corporations in addition to their regular salaries. But again we say we must take facts as we find them and not as someone may suppose them to be, and the facts as we find them show that, when the so-called "Big Plan" was put into effect, it was agreed that overhead expenses would be kept as low as possible, so that Seiders could receive his pay-off under the "Big Plan." That members of Group I were resolved to hold down expenses so Seiders could be paid off as soon as possible is shown by section 2 of the tentative "Big Plan" or "Turnover Plan" drawn up by Tague. Section 2 of that tentative plan reads:

In order that the purpose of this plan may most quickly be realized, it shall be the policy of the members of the organization to do everything in their power to reduce and hold down to the minimum overhead and operating expense of the business so that net profits out of which all cash rewards must be paid, may be accumulated as rapidly as possible, consistent with good business practice.

To that end members of Group I held a meeting early in 1926 and agreed with themselves and with Seth Seiders, president of all three corporations, that they would accept $15,000 each as salaries for 1926. This arrangement also continued into 1927. The $15,000 salary due to each was paid during most of the time by the $290 a week which they received in cash and retained. The $210 a week which

they received and immediately turned over to Seth Seiders and the bonus checks which were made out to them and immediately endorsed by them over to Seth Seiders, were in fact distributions by the respective corporations to Seth Seiders. Members of Group I were merely conduits through which these distributions were made to Seiders.

Whether we regard these distributions as ordinary dividends by the corporations to Seiders or as part of the pay-off to Seiders under the " Big Plan ", the effect is the same. For the purposes of taxation, they must be treated as dividend payments made by the corporations, and not as business expenses for which deductions may be taken. Cf. *R. L. Heflin, Inc.*, 7 B.T.A. 1002; approved by the Court of Claims, 58 Fed. (2d) 482; *Heath & Co.* v. *United States*, 2 Fed. Supp. 637; *Chattanooga Sav. Bank* v. *Brewer*, 17 Fed. (2d) 79; certiorari denied, 274 U.S. 751. We hold that as to these particular items of claimed deductions, petitioners have not sustained their burden of proof for proving that the so-called salaries and bonuses were paid as reasonable compensation for services rendered, and not as mere gratuities or payments in the nature of dividends. Cf. *Tumwater Lumber Mills Co.* v. *Commissioner*, 65 Fed. (2d) 675.

(3) *Proration to Howard Inc., by consolidation of accounts in part.*—As pointed out in our findings of fact, respondent made certain prorations of amounts paid during the taxable years as rent, postage, and so-called salaries and bonuses by Seiders, Inc., and Mather & Co. to Howard, Inc. He disallowed these items to Seiders, Inc., and to Mather & Co. and allowed them as deductions in part to Howard, Inc., and disallowed them in part. These prorations were made in accordance with certain agreements signed by the respective corporations and filed with respondent by duly authorized representatives of petitioners. The action of respondent as to these items is assigned by the petitioners, Seiders, Inc., and Mather & Co. as error. Respondent in his brief says: " It is conceded that the respondent erred in increasing the net income of Howard, Inc., as shown by the schedules attached to the consolidated return for 1926, by the sum of $26,639.20, representing a portion of the so-called salary and bonus payments which were made by Seiders, Inc. and Mather and Company during 1926."

But respondent says he " did not err in holding that a portion of the bona fide payments for salaries, rents and postage made by Mather and Company and Seiders, Inc., which said payments were claimed as expense deductions in the consolidated income tax return filed for 1926 and 1927 should be allowed to Howard, Inc. and disallowed to Seiders, Inc. and Mather and Company." These latter

account adjustments, as to which respondent is affirming his correctness in making, amount to a deduction of $30,524.03 allowed to Howard, Inc., for 1926 which it did not take on its books or in the consolidated income tax return. At the same time these adjustments amount to a disallowance to Seiders, Inc., for 1926 of $10,769.04 and to Mather & Co. for 1926 of $19,754.99, both of which claim they are entitled to the deductions which respondent has disallowed to them and has allowed to Howard, Inc. Respondent made a similar adjustment in the return of income of Seiders, Inc., for 1927 amounting to $12,890.66. This adjustment Seiders, Inc., contests on the same grounds as above stated. Seiders, Inc., is the only one of petitioners which is before us for the year 1927.

Respondent, in justification of these adjustments, says that what he did was in effect a consolidation of the salary, rent, and postage accounts of petitioners, by allowing to Howard, Inc., as deductions, certain of the amounts expended for salaries, postage, and rent by Seiders, Inc., and Mather & Co. during 1926 and certain of the amounts expended for salaries and rents by Seiders, Inc., and Mather & Co. during 1927, and disallowing these amounts as deductions in the cases of Mather & Co. and Seiders, Inc. What appears to have been attempted by respondent was to consolidate accounts only in part, after having denied affiliation to the three corporations. Petitioners contend that this the respondent had no right to do and that if these petitioners were asking the Board to consolidate their accounts only in part, giving as a reason the fact that rent and postage were not charged on their books in proportion to their sales, the Board would rightly deny the request. They cite *Broadway Strand Theatre Co.*, 12 B.T.A. 1052. In that case, in denying petitioner's request for a consolidation of accounts, we said: " Separate books of accounts were maintained in which were recorded the usual revenues and expenses. The mere fact that lump purchases may have been made for both businesses, especially when, as here, the purchases were allocated to each business, or the fact of an occasional exchange of an employee, without more, does not prove that this section should be invoked." In *Western Hide & Fur Co.*, 26 B.T.A. 354, we held that under section 240 (f) of the Revenue Act of 1926 a taxpayer invoking the provisions of the section must show the necessity for the consolidation of accounts and a method of " accurate distribution or apportionment " of the income and expenses of the two companies engaged in related trades or businesses and owned or controlled by the same interests. Cf. also *Crossett Western Co.*, 27 B.T.A. 258; *Flambeau Public Service Co.*, 27 B.T.A. 299; *Abe Ackerman*, 27 B.T.A. 413.

In all of these cases we denied consolidation of accounts. In the instant case the books of account of each petitioner are in evidence and show a complete separation of accounts in which the income and the deductions of each petitioner can be clearly and accurately determined. There is no confusion as to the income of the respective corporations. Under such circumstances there is no necessity for a consolidation of accounts and we think that none is permissible under the statute, even if it be conceded that petitioners did request it. Petitioners are well within their rights in resisting respondent's action in making a partial consolidation of their accounts. Respondent has denied the entire consolidation of accounts which would result from affiliation, and, having denied the right to file consolidated returns as affiliated corporations, he cannot consolidate accounts piecemeal under the conditions proved in these proceedings. Respondent has conceded error as to part of his action in consolidating accounts and we hold that the balance of his action in that respect was error. The deficiencies of all three petitioners should be recomputed accordingly.

(4) *Commissioner's affirmative allegations asking increased deficiencies.*—Respondent in his amended answer asks for increases in the deficiencies in the case of Seiders, Inc. As reasons for such increases, respondent alleges in detail in his brief, but not in his amended answer, that $71,380 of the alleged salaries and bonuses paid to Group I in 1926, and by them immediately turned over to Seth Seiders, was paid by Seiders, Inc., and deducted as business expenses, whereas respondent increased the net income of Seiders, Inc., on account thereof in his deficiency notice by the sum of only $43,185.06. Respondent alleges that therefore, inasmuch as the payments in question were not allowable deductions, the Board should allow an increase in the deficiency in the case of Seiders, Inc., for 1926, which increase should be based on the further disallowance of the amount of $28,194.94 ($71,380–$43,185.06). Respondent also concedes in this same connection in his brief, but not in his amended answer, that inasmuch as Mather & Co. made payments with reference to the so-called salaries and bonuses of only $36,960 during 1926, respondent should have disallowed this amount as a deduction to Mather & Co. instead of $41,515.73, which he did disallow. This concession by respondent will have the effect of reducing the income of Mather & Co. for 1926, as determined by respondent in the deficiency notice, by $4,555.73. Respondent alleges in his brief, but not in his amended answer, with reference to 1927 in the case of Seiders, Inc., that respondent has shown that so-called bonuses and salaries totaling $39,010 were paid by Seiders, Inc., and deducted by it in determining consolidated net income for 1926, and that respondent

in his deficiency notice disallowed to Seiders, Inc., only $36,889.01 on account of these items and that the deficiency in the case of Seiders, Inc., for 1927 should be increased to the extent that will be represented by adding $2,120.99 ($39,010–$36,889.01) to income for 1927.

Petitioners point out in their brief that the respondent did not by his amended answer, nor did he at the trial of the case, ask that the amounts disallowed by him, as discussed in the aforesaid allegations from respondent's brief, be changed to conform to the proof. " Therefore " say petitioners, " the Board will be required to find that the amount disallowed to Mather & Co. was excessive to the extent of $4,555.73, because the amount disallowed was excessive to that extent; and that the amount disallowed to Seiders, Inc., should stand as made by the Commissioner in his deficiency notice at $43,185.06." If the allegations of respondent's amended answer had been as full as the allegations in the brief concerning the particular transactions we are now discussing, they would have been sufficient to meet the test required by the rules of the Board with reference to affirmative allegations necessary to serve as a basis for an increased deficiency, but they are not sufficiently specific on these matters. In *Cascade Milling & Elevator Co.*, 25 B.T.A. 946, we held that the prayer of respondent's answer, claiming " the increased deficiency, if any " resulting from a redetermination, unsupported by particular averments upon which an increased deficiency could be based, was bad and should be stricken. Cf. *Moise* v. *Burnet*, 52 Fed. (2d) 1071. In *Cascade Milling & Elevator Co.*, *supra*, we said:

\* \* \* While, as indicated by the *Moise* decision, it is necessary for the respondent's pleadings to include an appropriately framed prayer for relief if an additional deficiency is sought, it is our understanding of the intent of the revenue act that the prayer must have the support of specific claims in each case based on specific grounds.

The undoubted purpose of section 274 (e) was to put the taxpayer on notice of any demand that the Commissioner proposed to make for an increase in the deficiency determined. The respondent's determination when it comes before us is presumptively correct. He can not consistently rely on that presumption and at the same time urge that the determination is wrong by asking for an increase. If the determination is wrong in any particular, the respondent should be required to allege *particularly wherein it is in error and state the facts relied on, as required by our Rule 14.* [Italics supplied.]

We do not regard the allegations in respondent's amended answer as sufficiently specific to justify the Board in finding an increased deficiency in Seiders, Inc., Docket 45015, by reason of respondent's making insufficient disallowances in 1926 and 1927 for so-called bonuses and salaries paid to employees of Seiders, Inc., and by them immediately turned over to Seth Seiders. Respondent's claim for increased deficiencies on these grounds is denied.

Respondent requested that the deficiency determined against Seiders, Inc., for 1927 be increased by the disallowance of certain bonuses which Seiders, Inc., paid to members of Group I in that year, to enable them to pay their increased income taxes due to 1926 income, and also be further increased by certain bonuses paid to certain employees to enable them to take stock in three Canadian corporations which were formed in that year. We think the bonuses paid by Seiders, Inc., in 1927 to members of Group I to reimburse them for the differences in their income taxes for 1926 income over what such taxes would have been if the so-called salaries and bonuses paid over to Seth Seiders had not been included, should not be allowed as deductions. They fall in the same category as the so-called salaries and bonuses disallowed as deductions for 1926. They are in the nature of dividends to reimburse members of Group I for income taxes on income which was really not theirs, but was promptly paid over to Seth Sciders as part of the pay-off under the " Big Plan." The disallowance by respondent of these tax bonuses to Seiders, Inc., for 1927 will not result in any increased deficiency for that year. The respondent, however, did not include such disallowances in his original deficiency notice and it was therefore necessary for respondent to make affirmative allegations with reference to these tax bonuses in his amended answer, and sustain the burden of proof as to them, both of which we hold he has done.

We think respondent has failed to meet the burden of proof required of him to sustain the additional disallowances which he claimed in his amended answer as to the bonuses paid in connection with the organization of the Canadian corporations. These disallowances were not made by respondent in the original deficiency notice to Seiders, Inc., but were set up by affirmative allegations in an amended answer filed in Docket No. 45015, part of which are quoted in our findings of fact. As to these affirmative allegations on which increased deficiencies are asked, the burden of proof is on respondent. Board's Rule 30. Cf. *Security First Nat. Bank of Los Angeles et al., Executors,* 28 B.T.A. 289.

In connection with this issue, the facts show that the taxpayer corporation charged these bonuses to salary expense and took deductions therefor in determining its net income for 1927. The petitioner Seiders, Inc., makes the contention that all the individuals to whom these bonuses were paid were employees of the company; that they had rendered valuable services to the company; and that if the president and principal stockholder of petitioner decided that the services rendered by these employees merited the reward of permitting them to participate in the stock ownership of subsidiary corporations, that was a matter within his reasonable discretion and

there is no evidence to show that this discretion was abused; that the respondent offered no adequate evidence to show that these bonuses given to employees with which to purchase stock in the Canadian subsidiaries were not as reward for services actually rendered and were reasonable in amount for services performed. We think these contentions of petitioner must be sustained. The bonuses in question were comparatively small in amount and do not belong in the classification which we have already discussed, where the so-called salaries and bonuses were not retained by the recipients but were immediately turned over to Seth Seiders and used by him as a part of the pay-off under the " Big Plan." Of course these employees should have and, so far as we know, did include these Canadian corporation bonuses in their individual income tax returns for 1927. *Charles Bispham Levey*, 26 B.T.A. 889. As to respondent's motion for an increase in the deficiency of Seiders, Inc., on account of these particular bonus payments, we hold for petitioner.

This disposes of all the issues raised by the pleadings, so far as we have been able to ascertain them from the mass of pleadings.

*Decision will be entered under Rule 50.*

