Alice G. Kales, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 56137, 70651. Promulgated October 1, 1936.

*Hal H. Smith, Esq.*, for the petitioner.
*Chester A. Gwinn, Esq.*, for the respondent.

1048

OPINION.

TURNER: The petitioner, citing section 23 (a) [1] of the Revenue Act of 1928, contends that the fees paid in connection with her suits for refund of Federal income taxes "are deductible as ordinary and necessary business expenses * * *, she being engaged in business." That the fees paid were ordinary and necessary expenses of the petitioner is not questioned. The language of the statute cited discloses, however, that it is not enough that a taxpayer be engaged in business. It is essential that the expenses be paid or incurred in the trade or business carried on; otherwise section 23 (a) is not applicable and the expenditures being personal their deduction is prohibited under the provisions of section 24 (a) (1) [2] of the act.

The question as to whether or not attorney fees paid by an individual are deductible under section 23 (a), *supra*, or similar provisions of other revenue acts, or are nondeductible under the provisions of section 24 (a) (1), *supra*, has been considered in numerous cases. The case most often referred to is *Kornhauser* v. *United States*, 276 U. S. 145. There the fees sought to be deducted were paid by the taxpayer to an attorney for defending a suit brought by the taxpayer's former partner for an accounting of alleged partnership earnings. It was held that since the subject matter of the suit was business earnings and the defense thereof was undertaken by the taxpayer for the purpose of preserving those earnings to himself, the suit was directly connected with or proximately resulted from the taxpayer's business and the fees paid in connection therewith were, for that reason, deductible under section 214 (a) (1) of the Revenue Act of 1918, which is the same as section 23 (a), *supra*. Our case here is one step removed, as to facts, from *Kornhauser* v. *United States*, *supra*. There the suit was based on the allegation that the earnings were realized in the conduct of a trade or business, namely, the partnership, and the outcome of the suit determined the ownership of those earnings. In the instant case no one disputed the petitioner's title or right to the proceeds from the sale of the Ford Motor Co. stock in 1919 or to the dividends which had been paid to her as

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) *Expenses.*—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) *General rule.*—In computing net income no deduction shall in any case be allowed in respect of—

(1) Personal, living, or family expenses.

a minority stockholder. The money was hers and the suit in respect of which the fees were paid did not question her ownership, but, contrary to the facts in the *Kornhauser* case, recognized and rested upon that ownership. But for the income tax law, which imposes a tax on gains whether they are realized from the conduct of a trade or business or from investments, the petitioner had no problem and, so far as the record shows, indulged in no activity with reference to the dividends or the proceeds of the stock sale other than the reinvestment and enjoyment of the money so received. In the case of this petitioner the refund suits and the issues therein would have been exactly the same regardless of whether she was engaged in a trade or business or was admittedly a mere holder of investments.

One of the arguments advanced in support of the deductions claimed is that the expenditures were made with respect to transactions producing taxable income. As a basis for this argument it is pointed out that the petitioner, in 1928, received taxable income in the form of interest as a result of one of the refund suits. It is further pointed out that the dividends received in 1919 on the Ford stock and the gain from the sale of that stock in the same year were also items of taxable income and were the items of income involved in the refund suits. In this connection the petitioner cites a letter from the Bureau of Internal Revenue to the Committee of Banking Institutions on Taxation in New York City under date of January 4, 1934, to the effect that it is the recently adopted policy of the Bureau to allow as deductions all "ordinary and necessary expenses paid or incurred during the taxable year with respect to the management, protection and handling of properties producing taxable income." The conclusion there stated is of no assistance here since it, also, depends on the applicability of section 23 (a), *supra*. Any individual might receive dividends, or gain from the sale of stocks, and still not be entitled to the deduction of fees expended in income tax litigation involving that income because that individual was not engaged in carrying on a trade or business. *Louis Kuhn*, 22 B. T. A. 975. See also *A. C. Barnes*, 21 B. T. A. 690. Furthermore, the receipt of taxable income as the result of a suit or other proceeding does not, in itself, provide a sufficient basis for the deduction of attorney fees paid in connection with such suit or proceeding. *Hall* v. *Helvering*, 70 Fed. (2d) 284; *Monell* v. *Helvering*, 70 Fed. (2d) 631. In these cases taxpayers sued to recover estate taxes paid by estates of which they were beneficiaries and the fees sought to be deducted were paid to attorneys in prosecuting those suits. In the latter case the court, in considering the question as to whether or not the fees so paid constituted a business expense and were deductible, or constituted a personal expense, the deduction of which is prohibited, said:

Thus treated, the fee paid the attorney for securing the interest refunded was paid to enforce the personal rights of the petitioner and is not deductible. *Commissioner* v. *Field*, (C. C. A.) 42 Fed. (2d) 820; *Lindley* v. *Commissioner*, (C. C. A.) 63 Fed. (2d) 807. When she incurred this expense, she was carrying on no trade or business distinguishable from her purely personal affairs in which her expenses are expressly made nondeductible. The point where the one class of expenses merges into the other is often hard to determine. But, however blurred it may be, it is necessary to keep the distinction which Congress has made. If we were to agree with the argument of the petitioner's counsel that the real test of deductibility is whether the expense was an ordinary and necessary one in obtaining income, we would take what might be supported as a fair one. If Congress had intended to allow deductions on that basis, however, it would have been too simple and easy to have said so to make it reasonable to believe that such was intended by the language which plainly limited expenses deductible to those incurred ordinarily and necessarily in carrying on a trade or business. If they come within the definition, expenses not incurred in obtaining income are deductible. The petitioner is really seeking to obtain the result which would follow from reporting net income only instead of that which follows from the present scheme of the law in getting the taxable net by taking allowable deductions from the statutory gross.

It matters not that the petitioner, as the result of the refund suit and in connection with which the fees sought to be deducted were paid, received interest which was reported in her income tax return for the taxable year. Neither does it matter that she received dividends on stock held for investment purposes or realized income from the sale of securities. She must have been engaged in a trade or business and the expenses must have been paid or incurred in carrying it on.

We have held that attorney fees paid in defense of an income tax claim are expenses paid in carrying on a trade or business and are deductible, where the claim for additional tax results from the disallowance of deductions for losses sustained and expenditures made in the conduct of such trade or business. *Caroline T. Kissel*, 15 B. T. A. 1270. On the other hand, we have held that attorney fees paid in defense of the proposed assessment of income tax against an individual or the prosecution of a suit to recover income taxes paid by an individual are not deductible where it is not shown that the taxpayer was engaged in a trade or business in the year in which the income involved in the litigation was realized. *Louis Kuhn, supra; Frank C. Hermann*, 20 B. T. A. 899. See also *A. C. Barnes, supra*, where the deduction of fees was disallowed, there being a definite finding that the fees were in no way connected with any trade or business carried on by the taxpayer in the year they were paid and there was no showing as to the conduct of a trade or business in the years in respect of which the refund suits were brought.

In line with the theory of the *Kissel* case, the petitioner contends that the income tax, recovered and sought to be recovered in her refund suits, was imposed on the proceeds of a trade or business carried

on by her and, for that reason, the fees paid in the prosecution of those suits were directly connected with the conduct of that trade or business and are deductible. The instant case is similar to the *Kissel* case in two respects. Here, as there, the taxpayer is a woman of substantial means and, as in that case, one of the questions involved is whether her activities in connection with the use of her property constituted the carrying on of a trade or business within the meaning of section 23 (a), *supra*. In the *Kissel* case, we were satisfied from the evidence and the testimony of record that the activities of the taxpayer were such as to constitute the conduct of a trade or business within the meaning of the statute. It is thus apparent that even under the theory of the *Kissel* case the deductibility of the fees in the instant case is dependent upon a determination that the activities of this petitioner in respect of the income involved in the refund suits constituted the conduct of a trade or business.

In petitioner's brief it is stated that although it is not necessary to characterize her business by name, her activities can perhaps best be described as comprising the business of a capitalist, and it is pointed out that according to Webster's Dictionary a capitalist is "a person of large property which is or may be employed in business." It is interesting to note that that definition, on its face, indicates that a capitalist may or may not be engaged in business. The substance of the argument made, however, is that the petitioner is a woman of such means that her activities in looking after her investments constituted the carrying on of a trade or business.

In *Foss* v. *Commissioner*, 75 Fed. (2d) 326, the court was considering the deductibility of fees paid by Foss in a suit brought against him as a majority stockholder of a corporation, in the business affairs of which he was actively engaged. The court, citing *Kornhauser* v. *United States*, *supra*, held that his activities constituted the carrying on of a trade or business within the meaning of the act, and since the litigation was plainly an outgrowth of his business activities, the fees paid in connection therewith were deductible. In reaching this conclusion the court said:

A person of property, who devotes his time to the active management of it and also to active participation in the management of the companies in which his property is invested, and who maintains an office for that purpose where he spends a substantial part of his time, is carrying on business within the meaning of this statute. * * * The line comes between those who take the position of passive investors, doing only what is necessary from an investment point of view, and those who associate themselves actively in the enterprises in which they are financially interested and devote a substantial part of their time to that work as a matter of business.

In the instant case there is no showing that the petitioner associated herself actively in any of the enterprises in which she held securities or that she devoted any of her time to the work of those enterprises

as a matter of business or in any way other than in the collection of whatever dividends or interest might be due or owing on the securities held. Her major holding was the block of 525 shares of stock in the Ford Motor Co. It does not appear that at any time during her ownership of the stock she devoted any time or effort to the business or the affairs of the Ford Motor Co. Her only activity shown by the record was the receipt of dividends paid. According to the record she was not even a party to the suit brought in 1916 to require the distribution of the dividend received by her in 1919 on her Ford stock. Neither is there anything connected with the sale of that stock which gives any indication of the carrying on of a trade or business. She was confronted with an investor's problem such as confronted all of the minority stockholders of the Ford Motor Co., the question being as to whether or not, all circumstances considered, it was advisable to liquidate her holdings and place the proceeds in other securities. She accepted the Ford offer and invested the proceeds in bonds. She stated from the witness stand that she knew nothing about bonds, but gave her approval to the lists of securities submitted by her attorneys. The only other activity in this connection, so far as the record shows, was a request that in so far as possible the bonds be purchased through a firm with which her niece's husband was connected.

Up to the end of 1919, which is the taxable year involved in the refund suits with respect to which the fees sought to be deducted herein were paid, the only other activity shown by the record in support of petitioner's claim that she was carrying on a trade or business was the purchase during the period from 1916 to 1919 of $321,250 in bonds. This amount, so far as we know, approximated the excess of her income over personal expenditures during that period.

The bulk of the proof offered in petitioner's behalf, however, was devoted to her transactions and activities subsequent to the year 1919, apparently on the theory that if she was engaged in a trade or business in the year in which the fees were paid, that fact would be a sufficient basis for the deduction of attorney fees even though they were expended in litigation involving income received in a taxable year nine years prior thereto and even though she may not have been engaged in business during the year that income was realized.

It is pointed out by the petitioner's counsel that her activities were due to a large extent to a shifting of her holdings from stocks to bonds and that the magnitude of the transactions in making this shift supports her claim that she was engaged in a trade or business. Rather than supporting a claim that the transactions denoted a business purpose, we think they are more indicative of an investment purpose. It is well recognized that bonds are a logical haven for investors. They offer security, a definite income, and the avoidance

of the hazards of conducting a trade or business. It is claimed that the petitioner sold stocks in the amount of several million dollars and purchased other stocks; that she also bought and sold bonds. The facts show that during the years 1920 to 1928, inclusive, she did receive $2,895,833.80 from the sale or liquidation of stocks, of which amount $470,168.46 went back into other stocks. It appears, however, that $2,187,875.69 of the above amount was received, not from the sale of stocks, but as a result of the liquidation of the Gray Estate Co., which, so far as we know, was a family holding company.

It is claimed that she was buying and selling bonds to such an extent and in such a manner as to constitute her activities in that direction a part of the conduct of a trade or business, and in support of that contention it is pointed out that she realized from the sale or maturity of bonds during the period from 1919 to 1928 approximately $3,000,000. The facts show that she did receive $2,890,031.33 in this manner, but of this amount $1,349,196.59 was received in 1927, the year in which she sold bonds, not for ordinary business purposes, but for the payment of notes given in 1925 for money borrowed to pay the income taxes in respect of which the refund suits were brought. Immediately upon the receipt of the refund in 1928, the bulk of the amount received was again placed in bonds. So far as we know the remainder of the $2,890,031.33 received was from bond maturities. Certainly there is no basis for contending that the receipt of money by a bondholder on maturity of a bond is anything to denote the conduct of a trade or business. The petitioner's activities during the years 1929 and 1930 were comparable to those in the years 1919 to 1928. In 1929 she received $195,500 from the maturity of bonds and purchased other bonds having a par value of $322,000. In 1930 she received from the maturity of bonds $182,500 and purchased bonds having a par value of $494,000. In 1929 she sold stocks which had cost $187,055 at a profit of $120 and purchased other stock at a cost of $296,293.05, while in 1930 her stock purchases amounted to only $55 and her sales to $210.

A great deal of time was devoted to showing the petitioner's real estate holdings and the activities of the petitioner and her employees with reference to the management and operation of those holdings. It is shown that one of the employees of the law firm of Beaumont, Smith & Harris was assigned the duties of looking after all of her real estate properties except one building, the manager of which accounted directly to the petitioner, and that this employee spent his time collecting rents, making leases, seeing about repairs and doing any and all acts necessary for the maintenance, upkeep, and rental of the properties in question. The facts show that the real estate was not received by the petitioner until 1927, when her

father's real estate was divided among his heirs, and even though it be said that the activities connected with the renting, leasing and maintaining of these real estate properties were such as to constitute the carrying on of a trade or business within the meaning of section 23 (a), *supra*, there is nothing whatever which would give any basis for the holding that the sale of petitioner's stock in the Ford Motor Co. in 1919 and the suit for the recovery of income taxes paid in respect of the gain thereon were activities which constituted a part of or were in any way connected with the management and operation of the petitioner's real estate properties, which she did not receive until 1927.

The sums of money handled by the petitioner are impressive as to amount, and if the size of an individual's fortune were the determining factor in the question as to whether or not a trade or business is carried on, this case might well be concluded in favor of the petitioner. It is not the size of a person's fortune, however, which determines that activities in connection therewith constitute the carrying on of a trade or business, but it is the use of the fortune and the nature of the activities indulged in that are most enlightening. We know of no theory which holds that the amount involved in a transaction or in a number of transactions determines the question stated. As a matter of fact, a person of small capital most often finds it necessary to use that capital in the operation or conduct of a business in order to produce income sufficient for a livelihood, while a person of large means is much more likely to realize a sufficient income from investments which require no activities in connection with the business enterprise itself, but merely the doing of those things which are necessary from an investment point of view, that is, the collecting of the dividends or interest, and such supervision as may be necessary to shift from one investment to another when safety, security, and the yield of income suggest such a course. Such activities do not partake of the nature of the conduct of a trade or business in the ordinary sense and do not, in our opinion, fall within the meaning of section 23 (a), *supra*.

We have pointed out that the fees paid in income tax litigations may be classified as expenses paid or incurred in carrying on a trade or business only if the subject matter of the litigation, namely, the income or claimed deductions, is directly connected with or grows out of the conduct of a trade or business. *Caroline T. Kissel, supra; Louis Kuhn, supra; Frank C. Hermann, supra; A. C. Barnes, supra.* We accordingly hold that the fees paid by the petitioner in the refund suits described herein were not paid or incurred in carrying on a trade or business within either of the taxable years 1928 or 1930, first, because the activities of the petitioner in connection with her securities did not, in our opinion, constiute the conduct of a trade or busi-

ness, and, second, because the subject matter of the refund suits was income realized in 1919 and had no connection whatever with any trade or business that may have been carried on by the petitioner in the years 1928 and 1930. We are of the further opinion that the fees in question were not paid in connection with and did not result from a trade or business carried on in 1919. The purchase of $321,250 in bonds from 1916 to 1919, the receipt or collection of dividends and interest on her securities up to and including the year 1919, the sale of 525 shares of stock in the Ford Motor Co. and the purchase of bonds with the proceeds, and the employment of Beaumont, Smith & Harris to advise her about her investments and to keep her personal accounts, including household accounts, do not, under the circumstances herein, show the conduct of a trade or business in 1919, and, under the authorities cited, there being no connection between the payment of the fees sought to be deducted and the conduct of a trade or business, the respondent is sustained.

The facts indicate that at least $250,840.52 of the $265,794.86 deducted by the petitioner under the designation of "Office Expenses" were fees of attorneys and witnesses expended in connection with the refund suits terminated in 1928. There is other evidence in the record which indicates that a portion of the balance of the amount so deducted obviously represented personal expenditures inasmuch as a part, at least, of that amount was paid to Beaumont, Smith & Harris for keeping the petitioner's books and records, looking after her personal bank account, the drawing of personal checks in payment of her household expenses, and the performing of other personal services in her behalf. Counsel for the respondent was unable to explain at the time of the hearing how the sum of $243,650 disallowed was arrived at, and even though it was then apparent that if any amount was to be disallowed the amount disallowed should have been greater, no motion was made for an increased deficiency, and, for that reason, our action here is limited to the finding of deficiencies not in excess of those originally determined by the respondent.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

Van Fossan, dissenting: I am unable to agree that petitioner was not engaged in a trade or business, both during the taxable years and previously since 1916. It is immaterial that she inherited a large part of her property. She at once assumed active management and supervision. She was in no sense merely a passive investor. In the most important matter that arose and which was the genesis of the deduction here claimed, she rejected advice and relied on her own judg-

ment. The situation is closely akin to that in *Bula E. Croker*, 27 B. T. A. 588, where we said: "The sale and care of this property and of her investments in Florida constituted her business. The fact that she employed an agent to act for her in these matters does not change the status of her business." Consequent on this conclusion, we allowed the deduction of attorney fees. In *Caroline T. Kissel*, 15 B. T. A. 1270, we said:

The record shows that petitioner is a woman of substantial means and that she invests rather heavily in stocks, bonds, and other securities, and in real estate and that her son is employed regularly to manage her affairs and maintains an office and employs two assistants for that purpose. We are satisfied from the evidence, and the testimony of record, that substantially all of the alleged errors or inaccuracies, out of which the proposed additional assessment arose, which attorneys were employed to defend, were not mere isolated personal transactions, but were connected with the petitioner's trade or business within the meaning of section 214 (a) (1), *supra*, and we, therefore, hold that the fees paid, plus reimbursed expenses, are deductible.

The deductions so allowed were for attorney fees in connection with the prosecution and litigation of matters pending before the Bureau of Internal Revenue.

Being of the opinion that petitioner's activity in the premises was such as to constitute a trade or business, I think the deduction should be allowed.