CORNELIA W. ROEBLING, PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 85381.   Promulgated January 14, 1938.

*William H. Wiegering, Esq.*, and *Robert W. Burton, Esq.*, for the
petitioner.

*F. R. Shearer, Esq., James C. Maddox, Esq.*, and *E. M. Woolf, Esq.*,
for the respondent.

## OPINION.

ARUNDELL: In the deficiency notice sent to the petitioner the respondent treated separately some of the items making up the total claimed deduction of $11,493.13. He disallowed the item of $4,000 representing payment to an individual for auditing books, preparation of tax returns, and procuring refund of taxes. The remainder of the total deduction is listed in the deficiency notice as $5,951.63, whereas the correct remainder is $5,979.43, a difference of $27.80. This item is the same in amount as the amount of taxes paid on rental of safe deposit boxes, and apparently was allowed by the respondent. Of the remainder of $5,951.63 the respondent disallowed $4,469.67 as being "allocable to tax-exempt income." The amount of $4,469.67 is 75.1 percent of $5,951.63.

In the petition filed herein the petitioner alleged the amount of $9,951.63 to be "ordinary business expenses" and alleged error on the part of the respondent in disallowing as ordinary business expenses (a) the amount paid for services of tax advisor and accountant and (b) the "75.1 percent of the total amount of all other expenses * * *." These allegations were denied by the respondent in his answer. By amended answer subsequently filed the respondent avers that he committed error in allowing the deduction of any portion of the claimed $11,493.13 and (quoting from the amended answer), "alleges affirmatively: (a) That during the year 1933 petitioner was not engaged in a trade or business. (b) That the deduction claimed was not incurred in connection with the carrying on of a trade or business."

Some of the items making up the total claimed by the petitioner are not affected by the respondent's change of position and will be disposed of first. There is an item of $173.63 claimed as postage, etc., as to which counsel for the petitioner concedes there is no proof as to the amount of the expenditure. The disallowance of that item is sustained. The $27.80 stipulated to be "taxes on safe deposit boxes" is clearly allowable as "taxes paid" under section 23 (c) of the Revenue Act of 1932, whether or not the petitioner was engaged in carrying on a trade or business. The item of $1,513.70, being the loss sustained on bonds, is not separately discussed by either side. This amount was claimed by petitioner to be a loss on the redemption of bonds; the parties have stipulated it to be a loss sustained on the sale of bonds. In either event the matter of allowance of the deduction would not depend upon whether the petitioner was engaged in trade or business. Losses are not confined to those sustained in the operation of business enterprises but are allowable "if incurred in any transaction entered into for profit, though not connected with the

trade or business." Sec. 23 (e) (2), Revenue Act of 1932. Neither side suggests that the provisions of section 23 (r), placing certain limitations on losses, are applicable. The respondent has not determined, and we will not presume, that the petitioner's acquisition of the bonds was inspired by a philanthropic or other nonprofit motive. The natural assumption is that an investor is actuated by a profit motive when he buys securities. As the respondent's disallowance is not based on any ground that would indicate any other purpose, we hold that the loss should be allowed.

According to the notice of deficiency in this case the respondent's disallowance of the $4,000 item is based on the ruling in *Charles Henry Mattlage*, 3 B. T. A. 242. In that case the Board, without opinion, sustained the disallowance of an amount paid to a firm of accountants for services rendered in connection with the preparation of the individual taxpayer's income tax return. The decided cases in which this question has been discussed hold that fees paid in connection with tax matters are deductible as expenses where the taxes result from business in which the taxpayer is engaged. *J. W. Forgeus*, 6 B. T. A. 291; *Caroline T. Kissel*, 15 B. T. A. 1270. Fees paid in connection with taxes on transactions not amounting to a trade or business are considered personal expenditures and not deductible. See *Malcolm G. Gibbs*, 34 B. T. A. 1028, and cases there cited. As to this item there has been no change of position by the respondent, and the burden of proof is on the petitioner.

The $4,000 fee paid in this case was paid for services rendered in prior years. The only evidence in regard to this payment is the testimony of the individual to whom it was paid. He testified that it was paid for audits, preparation of returns, and services in connection with proposed additional income taxes for prior years. The proposed additional taxes, he stated, involved the same question "as is raised in this case." We take this to mean that there was a controversy over whether or not the petitioner was engaged in carrying on a trade or business in the earlier years.

We have no evidence of the extent of the petitioner's business activities for the years prior to 1933. We have not been informed as to the outcome of the controversy over additional taxes for prior years. We do not know whether the Commissioner, or whoever passed judgment on the matter, determined the petitioner to have been engaged in a trade or business. Thus, the petitioner has failed to establish that she was engaged in a trade or business in the years for which this fee was paid, and consequently we can not find that it was a business expense.

We have left for consideration the following items: $5,000 salary paid to Austin C. Cooley; $500 paid to Cooley's secretary for services

rendered in connection with petitioner's affairs; and $278 paid for rental of safe deposit boxes. A portion of these items was disallowed as being "allocable to tax-exempt income", and in support of such disallowance the deficiency notice cites I. T. 2751, C. B. XIII–1, p. 43. That ruling, after citing other rulings of the Commissioner's office, decisions of this Board, and one court decision, concludes that "all the ordinary and necessary expenses paid or incurred during the taxable year with·respect to the management, protection, and conservation of properties producing taxable income should be allowed as deductions in computing net income." That ruling does not hold that expenses in producing exempt income are not deductible and the statute does not classify business expenses according to the character of the property handled or the income produced. *John H. Watson, Jr., et al., Trustees*, 35 B. T. A. 706. Where such classification is intended it is so provided in the statute as in the case of interest, deduction being disallowed for interest on money borrowed to purchase or carry exempt securities (sec. 23 (b), Revenue Act of 1932; *Denman v. Slayton*, 282 U. S. 514), and, beginning with the Revenue Act of 1934, for amounts allocable to exempt income, other than exempt interest. See *John H. Watson, Jr., et al., Trustees, supra*, distinguishing *Victor G. Marquissee*, 11 B. T. A. 334. It follows that the respondent's allowance of a part of the deduction must have been predicated upon a determination by him that the taxpayer's activities amounted to carrying on a trade or business. The respondent having made that determination and now affirmatively alleging error in so doing, the burden is on him to establish error. Board's Rule 30; *Henderson Tire & Rubber Co.*, 12 B. T. A. 716; *Drawoh, Inc.*, 28 B. T. A. 666, 686. The respondent has not met his burden of affirmatively proving that the petitioner was not engaged in carrying on a trade or business. The evidence on the respondent's side is mostly negative. Thus, it appears that the petitioner did not regularly visit the office in which her affairs were handled; she paid no rent for office space; her sales in the taxable year were only three in number. These negative matters are not enough in our opinion to overcome the presumption that the Commissioner correctly determined that the petitioner was carrying on a trade or business when he allowed part of her expenditures.

But if our holding as to the burden of proof is questioned and if the burden is on the petitioner to establish a trade or business, our opinion is that that burden has been met. The petitioner's evidence shows that she was engaged in the taxable year in managing securities of close to $9,000,000 in value in addition to her interest in the Roebling Co. Her management was an active one; she did not confine her interest to employing others to manage her property for

her. When it came to buying, selling, or reinvesting she conferred with Cooley and with her brokers and, after such conferences and after consulting investment services, she made the final decision. She instructed Cooley accordingly and he ordered purchases or sales in accordance with her instructions. She paid for the purchases by drawing checks herself. Cooley testified that he saw only one or two of the checks. Petitioner's interest in the Roebling Co. likewise engaged her active attention. She was a substantial stockholder in that company and frequently conferred with other stockholders as to the company's business. At stockholders' meetings she had Cooley vote her stock in accordance with instructions that she gave him. All of this evidence indicates activities on the part of this petitioner beyond those of a mere passive investor. Cf. *Foss* v. *Commissioner*, 75 Fed. (2d) 326; *Austin D. Barney et al., Executors*, 36 B. T. A. 446. This petitioner's purchases and sales, amounting to more than a half million dollars, exceeded in amount those in the case of *L. T. Alverson*, 35 B. T. A. 482, in which we allowed the deduction of the cost of statistical services in connection with the purchase and sale of securities. Her dividends for 1933 were in excess of $169,000 and interest received was over $230,000, which on its face shows at least a businesslike management of the petitioner's property. On authority of the cited cases, and in addition thereto considering the active interest of this petitioner in the management of her property, we are of the opinion and find as a fact that the petitioner's activities amounted to carrying on a trade or business. Consequently, the amounts expended for Cooley's services, the secretary's services, and rental of safe deposit box are deductible as business expenses.

The cases chiefly relied on by the respondent are distinguishable on the facts from this case. In *Helen W. Heilbroner*, 34 B. T. A. 1200, the taxpayer inherited a substantial amount of securities. She had no business experience. She placed some of the securities with a trust company to collect the income for which she paid the trust company a commission, and she engaged an employee of her brother to look after her accounts and paid $1,200 as her share of the employee's compensation and office rent. In that case it was found from the evidence that the taxpayer "did not manage her estate or direct its management. She merely received income from investments, and this is not a trade or business." In this case, as pointed out above, the evidence abundantly establishes active management by the petitioner. In *Alice G. Kales*, 34 B. T. A. 1046, the taxpayer was a woman of considerable means. A major part of her wealth was received from the estate of her father and included a block of automobile stock. Dividends on that stock and profit on its sale gave

rise to tax controversies with the Government. The taxpayer instituted suits against the Government and in connection therewith she paid fees, court costs, and legal expenses in 1928 and 1930 and claimed deductions therefor as business expenses. In that case it appeared that the taxpayer's principal activity with respect to her securities prior to the taxable years was that of shifting the bulk of her investments from stocks to bonds. It was found as a fact that the taxpayer "knew nothing about bonds, but her approval was always asked and given before the purchase or sale of bonds." In the case before us, it is shown that the petitioner informed herself as to the securities she bought and sold. She did not, as in the *Kales* case, merely give her assent to proposals formulated by others, but studied the recommendations and actually made her own decisions. In the *Kales* case, while the taxpayer's transactions amounted to considerable sums over a period of years, there is no showing of the extent of the taxpayer's activities in stocks for one of the taxable years; as to the other year, 1930, her stock purchases amounted to but $55 and her sales were in the amount of $210. No analysis of this point is needed to show the distinction between the two cases. In neither the *Heilbroner* nor the *Kales* case were the taxpayers active in personally handling their affairs as was the petitioner in this case, and the cited cases are not controlling here.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MURDOCK, concurring: I think this case is contrary to that of *Victor G. Marquissee*, 11 B. T. A. 334; affd., 47 Fed. (2d) 32. The effort to distinguish the latter case in the *Watson* case does not satisfy me. However, since the Commissioner has acquiesced in the *Watson* case, I concur in the result reached here.

SMITH agrees with the above.

---

TURNER, dissenting: The majority opinion undertakes to distinguish this case from the case of *Alice G. Kales*, 34 B. T. A. 1046. In my opinion, the two cases are indistinguishable and for that reason I note my dissent.

BLACK, MELLOTT, DISNEY, HARRON, and KERN agree with the above.