*578 OPINION.

Fraud and the Statute of Limitations.

Black :
The first question for our determination in this proceeding is whether petitioner’s income tax returns for each of the taxable years in question were false and fraudulent, with intent to evade tax. If they were not, then the statute of limitations bars any deficiencies which may be due and the respondent so concedes.
Section 601 of the Revenue Act of 1928 places the burden of proving fraud upon the respondent, and this burden he assumed at the hearing. The respondent, having asserted fraud, is charged with the duty of establishing it by more than a mere preponderance of the evidence. The evidence must be clear and convincing. Drawoh, Inc., 28 B. T. A. 666; Henry S. Kerbaugh, 29 B. T. A. 1014; affd., 74 Fed. (2d) 749; Budd v. Commissioner, 48 Fed. (2d) 509; National City Bank of New York, Executor, 35 B. T. A. 975; affd., 98 Fed. (2d) 98.
To establish his charge of fraud, respondent introduced the testimony of numerous witnesses and also introduced numerous exhibits, such as bank accounts and other records bearing upon the controversy. Petitioner and Walter A. Sebring, his accountant, testified for petitioner. To establish that petitioner received large amounts of income in each of the taxable years which he did not report for taxation, respondent relies principally upon the testimony of Carl E. ;Sunder, plus corroborating testimony of other witnesses and documentary exhibits. Sunder testified that during the years in question he was secretary and treasurer of the Victor Brewing Co. and that during that time the company manufactured real beer and sold it to customers as such, but retained for itself only the near beer price and paid over to petitioner the difference. The circumstances detailing how this was done are set out in our findings of fact and need not be repeated here. Sunder testified that in 1920 he paid over in this manner to petitioner, or someone representing him, in excess of $700,000; in 1921, in excess of $500,000; and in 1922, in excess of $500,000. None of these amounts was reported by petitioner in his income tax returns for those years.
Petitioner’s counsel, in their brief, urge that we discard Sunder’s testimony and refuse to believe it because he was confessedly engaged in the illegal liquor traffic along with petitioner and the rest *579 during the time in question and because he was an extortioner, since several years later he compelled petitioner to purchase Sunder’s stock in the Victor Brewing Co. at very much more than it was worth, by threatening to expose the events and transactions of 1920, 1921, and 1922 and petitioner’s connection with them to the tax authorities of the Federal Government.
If Sunder’s testimony stood alone, we think there would be great force in petitioner’s argument, but it does not stand alone. There is much evidence in the record to corroborate it.
Perhaps the strongest evidence in the record to support Sunder’s testimony is the bank accounts standing in petitioner’s name and in the names of those who were proved to be acting for petitioner. At the time respondent introduced these bank accounts in evidence he stated that he was not seeking to establish the amounts of the income which petitioner received in each of the taxable years by the bank deposit method, but that he was introducing this evidence for the purpose of corroborating Sunder’s testimony as to the amounts paid over to petitioner in each of the taxable years.
We think such evidence does corroborate Sunder’s testimony and shows that in each of the taxable years petitioner received large amounts of income which he did not report for taxation. Petitioner admits the receipt of this money, but pleads that it was paid over to him for the purpose of purchasing protection for the brewery from bribe-taking, faithless Government prohibition officials, and was not income to him 'but was income to the prohibition officials who got it. The testimony unmistakably shows that some of it was thus used, but it falls far short of showing that, all of it was thus used. Petitioner did not show how much of it was thus paid out, or give any figures by which we might calculate it, yet asks us to hold that none of these large amounts which admittedly he received were taxable income to him.
We think that what we said in M. Rea Gano, 19 B. T. A. 518, 533, is applicable to the facts of the instant case. Among other things, we there said:
A failure to report for taxation income unquestionably received, such action being predicated of a patently lame and untenable excuse, would seem to permit of no difference of opinion. It evidences a fraudulent purpose.
As we have already indicated, petitioner’s principal defense is that the money which respondent has proved was paid over to him was not paid over for his personal use, but in sort of a trust capacity, to be disbursed on behalf of the brewery to purchase “protection” from bribe-taking, corrupt prohibition officials. That petitioner did disburse an unproven part of the funds for that purpose we have already indicated, but we think the evidence falls far short of establishing that the large amounts in question, when paid over to petitioner, were im *580 pressed with such, a trust as to make petitioner not the owner of the income, but the mere conduit through which payments passed from the corporation to others who were the real owners of the income. Cf. O'Laughlin v. Helvering, 81 Fed. (2d) 269; National City Bank of New York, Executor, supra.
Therefore, we hold that petitioner’s income tax returns for each of the years 1920, 1921, and 1922 were false and fraudulent, with intent to evade tax. Petitioner’s plea of the statute of limitations is not sustained.

Amount of Petitioner's Unreported Income for Taxable Years.

Not only does petitioner contest the fraud issue and plead the statute of limitations, but he also contends that there is no deficiency or penalty for either year because petitioner reported all of his taxable income for taxation and paid the tax thereon. As to the items of income reported on petitioner’s income tax returns for the respective taxable years and the deductions taken thereon, there is no contest.
The controversy, as we have already stated, relates to the large sums of money paid over to petitioner as a result of the illegal sale of beer by the brewery. In the deficiency notice the Commissioner determined that petitioner received $921,264.23 in 1920, $597,529.33 in 1921, and $501,440.20 in 1922 from this source, and the deficiencies were computed accordingly. In the absence of anything else, the presumption is that the determinations thus made by the Commissioner in his deficiency notice are correct. Avery v. Commissioner, 22 Fed. (2d) 6.
We think, however, that it is unnecessary to base our decision on the presumption of correctness referred to by the court in the Avery case and by this Board and the courts in subsequent cases. The question of how much income petitioner received from the illegal sale of beer in the manner set out in our findings of fact was the subject of much testimony at the hearing and at the conclusion of the evidence the respondent voluntarily abandoned his claim of the amounts of income determined in his deficiency notice and asked that the Board find instead that petitioner’s unreported income for each of the taxable years in question was as follows: $500,000 for 1920, $100,000 for 1921, and $400,000 for 1922.
Even if we assume, without deciding, that in view of these circumstances respondent is no longer aided by any presumption as to the correctness of the determination made in his deficiency notice and the question becomes whether or not respondent has proved the amount of income, if any, which petitioner received in the taxable years and did not report, Tex-Penn Oil Co. v. Commissioner, 83 Fed. (2d) 518; Helvering v. Taylor, 293 U. S. 507, we think respondent has proved his case.
*581 As has already been stated under our discussion of tbe fraud issue, respondent bas proved, by bis witness, Carl E. Sunder, that be paid over to petitioner more than $700,000 in cash in 1920 from tbe illegal sale of beer. The bank accounts in evidence corroborate this testimony. Of this amount, Sunder testified that petitioner turned back to the¡ brewery $27,000 in 1920. Eespondent makes full allowance for this turn-back of funds and more besides, and asks only that tbe Board find that petitioner’s unreported income for 1920 was $500,000.
For 1921 Sunder testified that be paid over to the petitioner from tbe illegal sale of beer more than $500,000. The bank deposits introduced in evidence corroborate this testimony. Sunder testified that of this amount petitioner turned back to tbe brewery or to tbe brewery’s stockholders $400,000 in cash and that this $400,000 was used to finance an increase in the brewery’s capital stock of that amount. Eespondent makes full allowance for this $400,000 turned back, although he might well have contended that the portion used to pay for stock which was issued to petitioner, approximately $180,000, was income to petitioner in 1921. Petitioner concedes as much in his brief, although denying that there was any fraud in petitioner’s failure to report it for taxation. But respondent does not contend that this $180,000 was income to petitioner in 1921 but only that the difference between the $500,000 paid to petitioner and the $400,000 turned back be adjudged to be the amount of petitioner’s unreported income for 1921.
Sunder testified that in 1922 he paid over to petitioner from the illegal sale of beer more than $500,000, and this testimony was corroborated by the bank deposits which were introduced in evidence. Of this amount, Sunder testified that petitioner turned back $80,000 in 1922. The circumstances of this turn-back were that at various times during the year the Victor Brewing Co. invoiced to the Greens-burg Ice Co., another corporation which petitioner dominated, $80,000 worth of ice in excess of what was actually sold and delivered and that petitioner paid over to the Victor Brewing Co. at various times the $80,000 in question. Sunder testified that the reason these fictitious ice sales were made was because petitioner wanted the sales of ice by the Victor Brewing Co. to appear in excess of what they really were. At any rate, whatever the cause, respondent has made full allowance for this $80,000 turned back and more besides, because he asks only that the Board find that petitioner’s unreported income for 1922 be held to be $400,000.
As has already been stated, under our discussion of the fraud issue, the petitioner claims that he paid out large amounts of the funds which he thus received in each of the taxable years to purchase “protection” for the brewery to carry on its illegal traffic. He has not disclosed how much he thus paid out nor has he given us any facts or *582 figures upon, which, we could make an estimate. Even if he had done so, we think the allowance of any deduction based thereon would be against public policy. Cf. Tunnel Railroad of St. Louis v. Commissioner, 61 Fed. (2d) 166; Chicago, Rock Island & Pacific Railway Co., 13 B. T. A. 988; affd., 47 Fed. (2d) 990; Burroughs Building Material Co. v. Commissioner, 47 Fed. (2d) 178; Great Northern Railway Co. v. Commissioner, 40 Fed. (2d) 372; H. 8. Anderson, 35 B. T. A. 10; United States v. Sullivan, 274 U. S. 259.
Bespondent’s action at the hearing, in conceding allowances for all the amounts which the evidence showed that petitioner had turned back to the brewery in each of the taxable years, fully takes care of any deductions and eliminations on that score which are sustained by the record.
We, therefore, think respondent’s contention, that petitioner was in the: receipt of income for 1920 of $500,000, for 1921 of $100,000, and for 1922 of $400,000 which he did not report for taxation, is sustained by the evidence and we so hold. We also hold that part of the deficiencies for each of the taxable years is due to fraud with intent to evade the tax. We, therefore, sustain respondent’s contention that 50 percent of the deficiency should be added as a fraud penalty for each of the taxable years in question. See section 250 (b) of the Revenue Acts of 1918 and 1921.
Reviewed by Board.

Decision will be entered u/nder Rule 50.